ELIZABETH M. LePROHON, Appellant from decree of Judge of Probate in Estate of Ellen M. Greene, deceased.

## York.    Opinion May 1, 1907.

*Evidence.    Attorney and Client.    Privileged Communications.    Waiver of question of privilege.    Who may waive, stated.*

It is a universal rule that the question of privilege, with respect to communications offered in evidence, can be invoked only by the author of the communication.

But in the case of persons deceased the general rule is that the right of waiver, when the character and reputation of the deceased is not involved, is lodged in the personal representative, that is, the executor or administrator or the heirs of the deceased.

In the case at bar, testimony, material to the issue, with reference to a certain interview which the deceased had with an attorney at law and which did not involve the character or reputation of the deceased, was offered in evidence by the defendant, an heir at law. The plaintiff, beneficiary under the alleged will of the deceased, objected to this testimony on the ground that the interview was in the nature of a privileged communication

of the deceased to the attorney, and the testimony was excluded.　*Held*: Assuming that the interview between the deceased and the attorney, were the deceased living, falls within the rule of privileged communications, yet the defendant as heir at law had a right to waive the question of privilege and did waive the same and that the testimony should have been admitted.

On motions and exceptions by defendant.　Exceptions sustained. Motions not considered.

Appeal from the decree of the Judge of Probate, York County, refusing to allow an instrument as the last will and testament of Ellen M. Greene late of Saco, deceased.

Ellen M. Greene died in December, 1904, and she left as her next of kin and heirs at law one brother, Charles Frederick Greene, and several nephews and nieces, one of whom is the appellant and plaintiff.　On the first Tuesday of September, 1905, administration upon the estate of the said Ellen M. Greene was granted to one Melville H. Kelley.　Shortly after the death of the said Ellen M. Greene, a mutilated instrument was found purporting to be the last will and testament of the said Ellen M. Greene, but the signature of the said Ellen M. Greene thereto had been cut out.　This instrument was afterwards offered for probate, but after hearing, the Judge of Probate dismissed the petition for the probate of the alleged will, and thereupon the plaintiff, Elizabeth M. LeProhon, who is the beneficiary named in the alleged will, took an appeal from this decree to the Supreme Judicial Court sitting as the Supreme Court of Probate, September term, 1905, York County.

The case was continued to the January term, 1906, of said Supreme Judicial Court.　During the continuance, Charles Frederick Greene, the aforesaid brother of the said deceased, Ellen M. Greene, died.　No administrator of the estate of the said Charles Frederick Greene having been appointed, his widow, Mary C. Greene, appeared as an heir at law to contest the aforesaid appeal.

Tried at the said January term of said Supreme Judicial Court sitting as the Supreme Court of Probate.　The verdict sustained the instrument as the last will and testament of said deceased, Ellen M. Greene, and as neither revoked nor cancelled at the time of her death.

The defendant, Mary C. Greene, then filed a general motion for a new trial, also a motion for a new trial on the ground of newly discovered evidence.   Also during the trial the defendant offered the testimony of James O. Bradbury, an attorney at law, with reference to an interview which he once had with the deceased, Ellen M. Greene, in relation to "the best way to revoke a will."   This testimony was excluded and the defendant took exceptions.   Also the defendant requested the following instructions :   " It must be proved by indisputable evidence that the cancelled paper once existed as a finished will and it must also be shown by evidence equally indisputable that Miss Greene adhered to it throughout in mind and intention, notwithstanding its cancellation.   In the absence of either of these indisputable requisites the presumption is that the paper is not her will." These instructions were refused and the defendant excepted.

The two motions and the last exception were not considered by the Law Court.

The case appears in the opinion.

*George W. Heselton and Cleaves, Waterhouse & Emery*, for plaintiff.

*George F. & Leroy Haley*, for defendant.

SITTING :   WISWELL,   C.   J.,   WHITEHOUSE,   SAVAGE,   STROUT, SPEAR, JJ.

SPEAR, J.   This is an appeal from a decree of the Judge of Probate refusing to allow an instrument as the last will and testament of Ellen M. Greene, deceased.   Ellen M. Greene, an aged and unmarried woman of Saco, met her death by an accident in her own home, the night before Christmas, A. D. 1904.   Her only relative in Saco at the time was Charles Frederick Greene, a brother, who lived on North Street.   She left as her next of kin and heirs at law one brother, Charles Frederick Greene, and a large number of nephews and nieces, one of whom is Elizabeth M. LeProhon, the original appellant in this case.

Administration upon her estate was granted to Melville H. Kelley, on the first Tuesday of September, A. D. 1905.   A week or more after her decease a mutilated instrument purporting to be her last

will and testament was found. This instrument afterwards offered for probate was mutilated by having the signature of the testatrix cut out, and the contention of the proponent was that this mutilation was done after the death of the testatrix while the contestants claim it was done before. Upon hearing, the Judge of Probate dismissed the petition for probating the will, and Elizabeth M. LeProhon, the beneficiary therein named, claimed and entered an appeal at the September term of the Supreme Judicial Court for York County. The case was continued to the January term, and during the continuance Charles Frederick Greene died. No administrator of his estate having been appointed, his widow, Mary C. Greene, appeared as an heir at law to contest the appeal. The Court submitted to the jury the following questions of fact:

1. Was the instrument offered by the proponent as the last will and testament of Ellen M. Greene properly executed by her as and for her last will and testament at the time of its date?

Answer. Yes.

2. Did such instrument, at the time of her death, exist as the last will and testament of the said Ellen M. Greene, unrevoked by her?

Answer. Yes.

3. Was the cutting of the signature from the paper offered as the will of Ellen M. Greene done by her, or by any person by her direction in her presence?

Answer. No.

4. Was the cutting of the signature done by Ellen M. Greene, or by any person by her direction in her presence, with the intention of revoking her will?

Answer. No.

From these questions it is evident that the issue of fact presented to the jury was whether the mutilation of the will was the act of testatrix herself or agent, or was done by some other person subsequent to her decease.

The case comes here on exceptions and motions. The first exception relates to the exclusion of the testimony of James O. Bradbury of Saco, an attorney at law, with reference to an interview which he had with the testatrix, of the following tenor:

" In the fall of 1903, as I was going down by her house from dinner, she was out at the gate and stopped me, and asked me in. I went in and she asked me some questions about the matters of the real estate, and then she asked me what I thought was the best way to revoke a will.

" I told her that was a practical question; that any actual destruction of the will was sufficient. I told her that sometimes people burned such papers. She asked me if cutting the name from a will was a destruction or revocation of the will, and I told her if the testator cut the name knowingly from the will, that that was a destruction of the will, and then I added that, while as a matter of law it was not necessary, still if I was going to mutilate a will that I had made myself that in order to make it perfectly clear I should take and make a little memorandum on some blank place on the will, giving the date, and stating that on such date I destroyed the will by cutting my name out of it, and then whosoever hands it came into would know. She said she wanted to ask the question, she liked to preserve all her papers, whether they amounted to anything or not. This was substantially what she said.

" Q. Then, as I understand it, the substance of that conversation was the cutting out of the name, you instructed her, would cancel a will, and that you yourself, as a matter of caution, would endorse on it in writing, but you did not instruct her that it was necessary?

A.  No, sir. "

This testimony, if admissible, was important and material. The ground of its exclusion was that the interview was in the nature of a privileged communication of the decedent to Mr. Bradbury as an attorney. We think the ruling is wrong.

Were it conceded, although it is now unnecessary to determine it, that the interview between the decedent and Mr. Bradbury should be held to come within the rule of privileged communications were the decedent living, it would still be admissible under the principles of law covering the right of waiver by the personal representative or heir. The question involved in the present controversy is the descent of the decedent's property. The parties to the controversy

are the legatee under the mutilated will on the one side and an heir at law upon the other. The heir at law, waiving the question of privilege, offers the testimony of Mr. Bradbury in support of her contention with respect to the alleged mutilation of the will. The legatee objects on the ground only that the communication embodied in the Bradbury testimony was of a privileged character, therefore inadmissible under objection. It is a universal rule that the question of privilege, with respect to the communications offered in evidence, can be invoked only by the author of the communication. It is a personal privilege. The general principle upon which the right of privileged communication rests is too well established to require reiteration.

But in the case of persons deceased it is held that the right of waiver, when the character and reputation of the deceased are not involved, is lodged in the personal representative, that is, the executor or administrator of the estate, or the heirs of the deceased; and the ground upon which they are permitted to exercise the right of waiver is based upon the fact that they are all interested in the protection of the estate and upon the presumption that they would consent to the waiver of the privileged communication only for the purpose of securing that end.

This rule is general. Only two or three States in the Union have adopted the other rule that a privileged communication cannot be waived by the personal representative or the heirs of a deceased person.

Wigmore on Evidence, Sec. 2329, deduces from the decided cases this rule: "That an executor or administrator may exercise authority over all the interests of the estate left by the client, and yet may not incidentally have the right, in the interest of that estate, to waive the privilege of concealing confidential communications affecting it, would seem too inconsistent to be maintained under any system of law. It has, indeed, seldom been maintained for the present privilege; but the denial of this waiver in another field, by some courts, demands here the more emphatic repudiation of such a fallacy."

In support of the rule he cites the following authorities: Turner V. C. in *Russell* v. *Jackson*, 9 Hare, 387, 392. "In the cases of

testamentary dispositions the very foundation upon which the rule proceeds seems to be wanting; and in the absence therefore, of any illegal purpose obtained by the testator, there does not appear to be any grounds for applying it."

Collins, J., in *Layman's Will*, 40 Minn. 372, "There is an abundance of authority for saying that, upon the decease of the only person who could, in his lifetime, exercise the privilege of waiver, the rule should not be so perverted by a strict adherence to it as to render it inconsistent with its objects and thus bring it into direct conflict with the reason upon which it is founded. The object of the rule, so far as it relates to this class of communications, being the protection of the estate, there remains no reason for continuing it when the very foundation upon which it proceeds is wanting.

*Brooks* v. *Holden*, 175 Mass. 137 : "To allow the executor or administrator of the deceased client to waive the privilege, and to call the attorney to testify as to a privileged communication, in a suit involving the client's estate, no more militates against the spirit of public policy involved, than to allow the client himself to waive the privilege. Nor does it tend to weaken the protection which the rule gives for the benefit of the client as an individual. The executor or administrator acts with reference to the question of waiver as the personal representative of the deceased client, and solely in the interests of his estate."

After these quotations, and many others not here given, he proceeds to say : "This view is accepted with practical unanimity. It is further generally agreed that in testamentary contests the privilege is devisable, and may be waived by the executor, the administrator, the heir, the next of kin, or the legatee." This latter position of the text writer relating particularly to the exercise of the right of waiver by the heirs is supported by reference to a foot note citing many opinions from England, Canada, the State Courts and Supreme Court of the United States. *Fossler* v. *Schriber*, 38 Ill. 173. The "only heir of the client, held competent to waive the privilege, and even if there were other heirs not parties" the court would presume their concurrence.

*Winters* v. *Winters*, 102 Ia. 53, "An heir, devisee or other representative may waive."

*Glover* v. *Patten*, 165 U. S. 394, "Privilege ceases when contest is between heirs or next of kin."

Wigmore further declares in sec. 2391 : "It is incongruous to hold that the person who manages the litigation of the deceased's property interests has no power to waive rules of evidence for the purpose of advancing those interests. The power of an heir may also be conceded, if we remember that the heir, first, is at least equally interested in preserving the ancestor's reputation, and secondly, has an equal moral claim to protect the deceased's property-rights from unwarranted diminution. Except in two or three jurisdictions, it is usually agreed that the deceased's representative (and probably also the heir) may waive privilege."

Under these rules of law we think the testimony of Mr. Bradbury should have been admitted. It in no way reflected upon the character or reputation of Miss Greene and was material under the contention of the heir at law in effecting the protection of the estate. With the death of Miss Greene the seal of secrecy was removed from the lips of Mr. Bradbury and the reason for his silence no longer obtained, and, the reason for the rule having disappeared, the rule itself should no longer be invoked.

As the determination of this exception decided the case, it becomes unnecessary to discuss the motion, or the other exception, except to say that in our opinion the requested instruction was clearly too strong.

*Exceptions sustained.*