the merits. Levy v. Grove Mills Paper Co., 80 App. Div. 384, 386, 80 N. Y. Supp. 730. It had only power to grant the motion for a nonsuit; and the special verdict being made a part of the record on appeal, and this court having the power to "direct such judgment thereon as either party may be entitled to" (Code Civ. Proc. § 1187; Hoey v. Met. St. R. Co., 70 App. Div. 60, 62, 74 N. Y. Supp. 1113), it only remains to inquire whether the evidence in this case was such as to require the jury to reach the conclusion that the defendants were negligent in the operation of these floats, which are large barges constructed for the purpose of conveying freight or passenger cars and towed to their destination by steam tugs.

The evidence was undisputed that on the morning in question there was a heavy fog; that the boats or barges were approaching each other, sounding fog warnings at intervals; that they were seen by the respective captains of the tugboats who were in charge of the navigation of the craft, when from 200 to 500 feet apart; that danger signals were given; and that the engines on each of the tugs were reversed, and apparently that everything that could be done was done to avert the collision. There was no expert evidence introduced as to the proper method of handling these floats, no negligence is suggested as to the method of towing these boats, and all the evidence before the jury tended to show that the boats, operated at half speed in the fog, were operated with ordinary care. Under such circumstances, the mere fact that a collision has occurred and that some one has been injured does not establish actionable negligence, and the verdict of the jury was clearly in harmony with the evidence.

This being the case, the court was justified in granting the motion for a nonsuit upon the coming in of the special verdict, and the judgments and order appealed from should be affirmed.

HIRSCHBERG, P. J., concurs.

---

In re CUNNION'S WILL.

(Supreme Court, Appellate Division, Second Department.  December 30, 1909.)

1. WILLS (§ 179*)—REVOCATION BY LATER WILL.
    The execution of a later will does not necessarily revoke an earlier one.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 456, 457; Dec. Dig. § 179.*]

2. WILLS (§ 290*)—PROBATE—CONTEST—BURDEN OF PROOF.
    Where a will is offered for probate as the last will of the decedent, and this fact is contested. the burden is upon the contestant to prove the contents of a second will, and to show that it expressly or by necessary implication revoked the former will.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 663; Dec. Dig. § 290.*]

3. EVIDENCE (§ 165*)—BEST AND SECONDARY EVIDENCE—CONTENTS OF WILL.
    Where, in probate proceedings, the will offered in evidence is contested on the ground that it is not the last will of decedent, but that another

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was executed, and the loss of the later will has been proved, secondary evidence of its contents is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 553; Dec. Dig. § 165.*]

4. WITNESSES (§ 202*)—PRIVILEGED COMMUNICATIONS—COMMUNICATIONS WITH ATTORNEY.

Under Code Civ. Proc. § 835, providing that an attorney shall not be allowed to disclose a communication made by his client to him in the course of his professional employment, an attorney for a testator will not be allowed to testify, in probate proceedings in which the will offered for probate is contested on the ground that a subsequent will, which has been lost, revoked the will offered, as to the contents of a subsequent will which he drew for the testator; it being presumed that it was drawn from communications made to him by the testator. Neither will a draft of the will, which was copied by a stenographer, and which the attorney testifies was the same as the will signed by testator, be admitted in evidence.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 756; Dec. Dig. § 202.*]

Appeal from Surrogate's Court, Kings County.

In the matter of the probate of the last will and testament of John Cunnion. From a decree admitting to probate a paper as the last will, an appeal was taken. Affirmed.

See, also, 61 Misc. Rep. 546, 115 N. Y. Supp. 969.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

John J. Curtin, for appellant.
M. F. McGoldrick, for respondent.

BURR, J. This appeal is taken from a decree of the Surrogate's Court of Kings county which admitted to probate as the last will and testament of John Cunnion a paper dated September 9, 1907. The death of Cunnion, the execution of the paper by him with all the formalities required by the law of wills, his testamentary capacity, and his freedom from undue influence, were all undisputed. Probate was resisted upon the ground that the testator had executed another and later will, by which this was revoked. It was found by the Surrogate's Court that on the 6th day of June, 1908, he did execute another will with the requisite formalities, and that he was entirely competent to execute the same. This will was delivered to the said Cunnion, and, although diligent search was made for it after his death, it has not been found. If the later will revoked the former one, although it was destroyed by the testator in his lifetime, the former will would not be thereby revived, since it was never duly republished. 3 Cumming & G. Gen. Laws, p. 4469, § 53. The execution of a later will does not necessarily import the revocation of an earlier one. 1 Jarman on Wills (Bigelow's 6th Ed.) 171. It was incumbent, therefore, upon the contestant to prove the contents of the second will, and to show that either it contained express words of revocation or that there was an implied revocation because its provisions were so inconsistent with the former will that they could not exist together. Id. 169.

The correctness of the ruling of the surrogate with regard to evi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dence tending to prove the contents of the later will presents the only question in this case. The contestant called as a witness Francis L. Maher, who testified as follows:

"I am an attorney and counselor at law. * * * I drew the will in this. proceeding; * * * the one offered for probate, I drew that. I drew a will before that, and one after that. The one I drew after that was on the 6th day of June of this year. I was present at the time of the execution of that will. I gave it to Mr. Cunnion. He took it with him. * * * I remember the contents of the will."

He was then asked this question: "I ask you to state the contents, all that you can remember." This was objected to as not being the best evidence, and also "as privileged under section 835 of the Code." The objection was sustained. Mr. Maher then testified, upon being shown a paper, that he drew it in the latter part of May, 1908, and made some alterations in it on the 6th day of June in the same year. This paper was marked "Exhibit 1" for identification. Miss Duncan was then called as a witness, and testified that she was a stenographer, employed by Mr. Maher. She was then shown the paper, and testified that she made a copy of it and returned it to Mr. Maher. Mr. Maher was then recalled as a witness, and stated that the paper which Miss Duncan returned to him was the paper which was executed on June 6th by John Cunnion. It was then offered in evidence. It was objected to, and the surrogate excluded it, upon the ground that to admit it "would be in violation of section 835 of the Code." This comprises all of the evidence upon the subject.

The objection to Mr. Maher's testimony upon the first ground stated was not well taken. The loss of the original had been abundantly proved, so that secondary evidence of its contents became admissible. The other ground of objection is more serious. "An attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment, nor shall any clerk, stenographer or other person employed by such attorney or counselor be allowed to disclose any such communication or advice given thereon." Code Civ. Proc. § 835. Although it does not expressly appear from what source Mr. Maher's knowledge of the contents of the paper of June 6th was derived, in the absence of evidence to the contrary it must be assumed that it was from communications made to him by the decedent which enabled him to draw the same. Unless, therefore, waived, the prohibition would be applicable. The statutory provisions respecting waiver are found in the succeeding section of the Code. Code Civ. Proc. § 836. That the prohibition has been waived in the manner required by the statute no one contends.

The appellant claims, however, that in the case of wills a special rule must be applied, and that the confidence reposed by a client in his attorney in respect to the contents of the instrument is only temporary. In Wigmore on Evidence, vol. 4, § 2314, the author says:

"But for wills a special consideration comes into play. Here it can hardly be doubted that the execution, and especially the contents, are impliedly desired by the client to be kept secret during his lifetime, and are accordingly a part of his confidential communication. It must be assumed that during that period the attorney ought not to be called upon to disclose even the fact

of a will's execution, much less its tenor. But, on the other hand, this confidence is intended to be temporary only. * * * It follows, therefore, that after the testator's death the attorney is at liberty to disclose all that affects the execution and tenor of the will. * * * As to the tenor and execution of the will, it seems hardly open to dispute that they are the very facts which the testator expected and intended to be disclosed after his death."

There are two answers to this suggestion: First, the paper the contents of which they seek to prove was not a last will left by the testator. It did not survive him. He never intended that it should be published to the world, and it cannot be argued that he desired the contents to be known after his death, and therefore waived any privilege, for he destroyed the paper in his lifetime. Second, although the principle here contended for seems to find some support in other jurisdictions, the authority in this state is to the contrary. Loder v. Whelpley, 111 N. Y. 239, 18 N. E. 874; In the Matter of Coleman, 111 N. Y. 220, 19 N. E. 71. In Loder v. Whelpley the witness, who was a lawyer, drew the will from a memorandum prepared by the decedent and addressed to him. While he was under examination it was offered in evidence, and received by the surrogate over proper objection. The court held that this was error, although in that particular case it was not so prejudicial as to require a reversal of the judgment. The court say:

"A lawyer, in receiving the directions or instructions of one intending to make a will, is confided in by reason of his professional character as a counselor, and he acts in that capacity, although asking no questions and without advising, he does nothing more than to reduce those directions to writing. The relation, therefore, between the testatrix and the witness was that of client and attorney."

In the Coleman Case the court say:

"The evidence showed that the witnesses were a firm of lawyers, residing at Sandy Hill, and were employed by the testator in their professional capacity to draw such wills, and that the conversations testified to were had with them for the purpose of enabling them to execute the instructions of the testator. That these interviews were had in pursuance of and under the sanction of a professional employment, and that communications made by a client under such circumstances to his attorneys were clearly within the protection of the statute, we have no doubt. * * * The prohibition of the statute, therefore, applies to these communications, and they were inadmissible as evidence, unless brought within the provisions of section 836, authorizing their disclosure."

The question remains whether the court was in error in excluding the paper referred to as Exhibit 1 for identification. It had been proved without objection that the paper offered in evidence was a copy of the paper executed on June 6th. It is urged that if this paper is received in evidence the attorney does not disclose anything, since the paper speaks for itself. It seems to us that this contention is not well made. The paper must be considered in connection with the attorney's relation to it. If the attorney had kept no copy of the paper of June 8th, he could not disclose his recollection of the contents of it, because that involved confidential communications from his client. Can a different rule be invoked because he wrote down on a separate sheet of paper the contents of that communication, instead of trusting to his memory? The paper is in spirit and effect the communication from the client to the attorney. The rule might be quite different if it was a paper which

some one 'else had prepared, but which had been given to the attorney by his client. Schattman v. American Credit Indemnity Co., 34 App. Div. 392, on page 398, 54 N. Y. Supp. 225; Jones v. Reilly, 174 N. Y. 97, 66 N. E. 649. The contents of that paper ·would not have been the embodiment in written form of the communication from the client to the attorney. This paper is. "The test is whether the document first came into existence as a part of the communication to the attorney." 4 Wigmore on Evidence, p. 3228, § 2307. It may be unfortunate if a paper which the testator never intended to operate as a disposition of his property after his death should be given that effect. But we see no way in which the Surrogate's Court could have reached a different conclusion from that arrived at in this case without overturning well-established rules of law.

The decree of the Surrogate's Court of Kings county should be affirmed, with costs. All concur.