ESTATE OF LANDAUER: HOLTY, Objector and Appellant, vs. LANDAUER and another, Proponents and Respondents.*

*March 5—April 8, 1952.*

For the appellant there were briefs by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Mr. Harding.*

*Chester J. Niebler* of Milwaukee, for the respondents.

FRITZ, C. J. Joseph A. Landauer died on February 15, 1951, a resident of Milwaukee, Wisconsin. His sole and only heir at law is his widow, Frances O. Landauer. His will dated September 29, 1949, and a codicil dated September 11, 1950, were offered and admitted to probate as testator's last will and testament by an order granted by County Judge SHERIDAN on March 1, 1951. On March 15, 1951, Carl R. Holty, a nephew and legatee under said will—but not an

---

* Motion for rehearing denied, with $25 costs, on June 3, 1952.

heir at law of the testator—filed an unverified, unsigned petition objecting to the probate of said will and codicil on the ground that they were procured through the undue influence of the testator's widow, Frances O. Landauer. Upon that petition, County Judge Stauff, who presided in another branch of the Milwaukee county court, entered an order requiring testator's widow to show cause in the branch presided over by Judge Sheridan why the order which admitted said will and codicil to probate should not be revoked and rescinded, and the probate thereof terminated; and said order to show cause enjoined the executors to whom letters testamentary had been issued from further proceeding with such probate. The executors and testator's widow objected to proceedings under said order to show cause, and moved for dismissal thereof on the ground that, although Holty is a nephew of said deceased and is named as a legatee in the instruments admitted to probate, he is not an heir at law of the testator. Holty's objections to the probate of the will and codicil were brought on for a hearing and the taking of testimony by Judge Sheridan on April 13, 1951, which was concluded on May 11, 1951. Thereupon, in addition to the facts found by Judge Sheridan in admitting said testamentary instruments to probate on March 1, 1951, the court found that for twenty-five years next preceding the death of the testator, Harry V. Meissner had been his attorney and during such retainer had drafted several wills for the testator, including the will and codicil admitted to probate on March 1, 1951; that Meissner had been consulted from time to time by the testator on his will matters and had in his possession several previous wills drafted by him for the testator, including the will and codicil admitted to probate on March 1, 1951; that in every instance where the testator had Meissner draft a later will the testator tore the signature from the prior will and such mutilated instruments were all still in Meissner's possession; and that Holty had Meissner subpoenaed for a hearing on May 11, 1951, and demanded

that he produce whatever prior testamentary instruments executed by the testator he had in his files. After Meissner was sworn as a witness in open court he refused to divulge the contents of said prior testamentary instruments and the testator's communications to him; and he claimed the privilege of sec. 325.22, Stats. Meissner's claim as to that privilege was upheld by the court. The court found and adjudged that the testator left as his sole and only heir at law his widow, Frances O. Landauer; that the testator had properly executed said will and codicil dated September 29, 1949, and September 11, 1950, respectively; and that said instruments had been duly admitted to probate as the testator's last will and testament. Upon the court's ruling in respect to said claim of privilege under sec. 325.22, Stats., and the findings of fact as stated above, the court concluded that the order of March 1, 1951, admitting said will and codicil to probate as the last will and testament of Joseph A. Landauer and the issuance of letters testamentary thereon should be affirmed. In connection therewith the court found and adjudged that no undue influence was used by the widow, Frances O. Landauer, in the procurement of said testamentary instruments; that Holty's petition for vacating and setting aside the probate thereof be dismissed upon the merits; and that the estate of Joseph A. Landauer have judgment for costs against Holty.

On this appeal Holty's attorneys state in their brief that "at the opening hearing on Holty's motion [to reopen the proof of the will], it was conceded that unless he could present an earlier will under which he was a beneficiary, he had no standing to contest the 1949 will." The hearing was continued for one month to give Holty an opportunity to present proof of the earlier will of the decedent which would give Holty the right to contest the subsequent instrument. When his motion again came on for hearing a month later, he subpoenaed Meissner who admitted that he had drawn six wills for the decedent within the last ten years, including the will

which had been admitted to probate, and that he was in possession of the earlier wills on which he also acted as an attesting witness; but he refused to produce them on the ground of privilege under the provisions in sec. 325.22, Stats., that "an attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment. . . ." The court sustained Meissner's refusal to produce the prior wills and ruled that he shall not be allowed to disclose the contents of the prior wills which he had drawn for the testator as his attorney. However, in respect to said testamentary instruments admitted to probate on March 1, 1951, the privilege under sec. 325.22, Stats., must be deemed to have been waived by the testator because these instruments were signed by Meissner as an attesting witness. In *McMaster v. Scriven,* 85 Wis. 162, 55 N. W. 149, the testimony of Attorney Wickhem, who drafted and signed the testatrix's will as an attesting witness was objected to on the ground that he was not a competent witness to testify as to what took place between him and his client, but the trial court overruled the objection. On the appeal this court stated (p. 167) :

"The objection made to the reception in evidence of the instructions given by the testatrix to Mr. Wickhem, the attorney who prepared her will, and what took place between them on the subject of the will, is founded on the statute (sec. 4076, R. S.) [now sec. 325.22, Stats.], which provides than 'an attorney or counselor shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment.' The testatrix requested Mr. Wickhem to sign the will which was the result of the communications between them, as a subscribing witness, and he signed it accordingly. This must be held to be a waiver of objection to his competency, so as to leave the witness free to perform the duties of the position, and to testify to any matter in relation to the will and its execution of which he acquired knowledge by virtue of his professional relation, including the mental condition of the

testatrix at the time. *In re Will of Coleman,* 111 N. Y. 220; *Alberti v. N. Y., L. E., & W. R. Co.* 118 N. Y. 85."

In relation to the matters and citations thus stated in the *McMaster Case* the court stated in *Will of Hunt,* 122 Wis. 460, 468, 100 N. W. 874:

"In such cases the thing done must be futile unless the acts and declarations constituting the execution and publication of the will be disclosed in, testimony by the attorney; hence by clear implication the testator declares his wish that they be disclosed to the extent necessary. Other instances of implied waiver by the client are collected in *Koeber v. Somers,* 108 Wis. 497, 503, 84 N. W. 991, and *Herman v. Schlesinger,* 114 Wis. 382, 393, 90 N. W. 460." *Will of Downing,* 118 Wis. 581, 95 N. W. 876; *In re Young's Estate,* 33 Utah, 382, 392, 94 Pac. 731; 17 L. R. A. (N. S.) 108; Anno. 2 A. L. R. (2d) 645, 659, sec. 13.

Consequently as Meissner, as the result of the communications between the testator and himself, signed said last will and codicil as an attesting witness, that must be held to be a waiver by the testator of any objection to Meissner's competency so as to leave him free to perform the duties of such position and testify to any matter in relation to the testator's will and codicil and the execution thereof as to which Meissner acquired knowledge by virtue of his professional relation.

Holty also objected to the probate of the will and codicil in question, on the grounds that the execution thereof was procured by undue influence over the testator by his wife; that said instruments are not his last will and testament; and that Holty had no opportunity to present any evidence on that issue. His attorneys contend they protested to the court that there had been no opportunity to introduce any evidence of undue influence on the trial. In that respect the court stated: "There were no witnesses sworn other than Mr. Meissner and no attempt to show undue influence other than the testimony of Mr. Meissner and the widow." In the findings of fact the court stated: "There is not one scintilla of

evidence that would indicate any undue influence practiced by the widow upon the deceased; . . ." and the court concluded: "That no undue influence was used by the widow, Frances O. Landauer, in the procurement of such instruments, . . . admitted as the last will and testament of Joseph A. Landauer, deceased. . . ."

*By the Court.*—Judgment reversed and cause remanded for a new trial.

CURRIE, J. (*concurring*). This concurring opinion has been prompted by the dissenting opinion filed herein.

The dissenting opinion states that "we are not dealing here with a will contest." The will of September 29, 1949, and the codicil of September 11, 1950, were admitted to probate *ex parte* upon a waiver signed by the widow as sole heir at law and next of kin of testator without any notice being given by publication, or otherwise. The application of Carl R. Holty was therefore a proceeding under sec. 324.05, Stats., for reopening of the probate and granting a new trial on the issue of whether such will and codicil should be admitted to probate. If the order admitting the will and codicil to probate is revoked and a new trial granted, the trial court will then have before it a typical will contest in which objections have been filed alleging undue influence.

However, the rules of evidence applicable to a hearing on an application revoking an order admitting a will to probate, on the ground that the will was originally obtained by undue influence, and for a new trial on the issue presented by the objections of the objector, are the same as in a will contest proper.

Former wills have been admitted in evidence many times in cases reviewed by this court wherein it was sought to set aside a will on the ground of undue influence. *Will of Bocker* (1918), 167 Wis. 100, 166 N. W. 660; *Will of Boardman* (1922), 178 Wis. 517, 190 N. W. 355; *Will of Link* (1930), 202 Wis. 1, 231 N. W. 177; *Will of Stanley* (1937), 226

Wis. 354, 276 N. W. 353; and *Will of Klofonda* (1949), 254 Wis. 186, 36 N. W. (2d) 71. See also the annotation in 82 A. L. R. 963, 968, 970. There is no question but what former wills may constitute material evidence in will contests, and we have before us in this case the issue of whether, if such former wills happen to be in the possession of an attorney for testator, they constitute privileged communications which are barred by sec. 325.22, Stats. This court has declared in *Will of Downing* (1903), 118 Wis. 581, 95 N. W. 876, and *Koeber v. Somers* (1901), 108 Wis. 497, 504, 84 N. W. 991, that sec. 4076 (now sec. 325.22), is nothing more than a re-enactment of the common law. At the time these two decisions were rendered, sec. 4076 read the same as the first sentence of sec. 325.22, Stats. 1951, but the later addition of the second sentence of present sec. 325.22 does not make the statute more restrictive than the common law, because such second sentence merely provides for exceptions to the rule stated in the first sentence, which exceptions are also recognized at common law.

Probably the leading case on the application of the common-law rule with respect to the admissibility in will cases of communications between a deceased testator and his attorney is that of *Glover v. Patten* (1897), 165 U. S. 394, 406, 17 Sup. Ct. 411, 41 L. Ed. 760. In this case the United States supreme court speaking through Mr. Justice BROWN reviewed the English cases on the subject and came to the following conclusion:

"But whatever view be taken of the facts, we are of opinion that, in a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged. While such communications might be privileged, if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin."

This same rule is stated in 70 C. J., Witnesses, p. 438, sec. 587, as follows:

"It is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client; and, so, where the controversy is to determine who shall take by succession the property of a deceased person and both parties claim under him, neither can set up a claim of privilege against the other as regards the communications of deceased with his attorney."

Other authorities holding that, in litigation between heirs, devisees, and legatees, all claiming through the testator, either by inheritance under intestacy statutes or through a last will and testament, the rule of a privileged communication between testator and his attorney cannot be invoked by one party against another to exclude such a communication which is material on the issues of the case are: 58 Am. Jur., Witnesses, p. 284, sec. 505; 70 C. J., Witnesses, p. 425, sec. 567; Anno. 2 A. L. R. (2d) 645, 659; *Kern v. Kern* (1900), 154 Ind. 29, 55 N. E. 1004; *Winters v. Winters* (1897), 102 Iowa, 53, 71 N. W. 184; *Greene's Estate* (1907), 102 Me. 455, 67 Atl. 317; *Bensinger v. Hemler* (1919), 134 Md. 581, 107 Atl. 355; *Eicholtz v. Grunewald* (1946), 313 Mich. 666, 21 N. W. (2d) 914; and *Estate of Wunsch* (1929), 177 Minn. 169, 225 N. W. 109.

The majority opinion cites *In re Young's Estate* (1908), 33 Utah, 382, 392, 94 Pac. 731, 17 L. R. A. (N. S.) 108, in which the Utah court in a very well-reasoned opinion directly held that it was proper to prove by the attorney for the testator the contents of a former will, and declared:

"We are constrained to hold, therefore, that as between heirs or beneficiaries of a deceased person in a will contest, where undue influence or want of capacity are in issue, neither side can invoke the privilege as against the testimony of an attorney who prepared the will under the direction of the deceased, and the attorney should be required to disclose all matters relevant to such issues the same as any other person cognizant of the facts would be."

Another case very much in point is *Will of Everett* (1933), 105 Vt. 291, 313, 166 Atl. 827, in which it was held in a

will contest that three letters received by an attorney from testator relating to changes testator proposed to make in a previous will (not the will offered for probate) were admissible on the ground that after the client's death such letters were not within the protection of the rule as to privileged communications in a suit between testator's devisees and his heirs at law, or other parties who claimed under the testator.

The dissenting opinion cites a New York decision on the question of privileged communications. However, the Nebraska supreme court in the case of *Estate of Bayer* (1928), 116 Neb. 670, 218 N. W. 746, points out that the early New York cases followed the common-law rule, to the effect that the privilege between attorney and client did not apply in will contests where all parties claimed under the testator, until 1877 when the New York statute was changed. Prior to such statutory change in New York, the New York statute was similar in wording to the first sentence of sec. 325.22, Stats. After the change, the New York statutes (secs. 353 and 354 of the Civil Practice Act, Thompson's Laws of New York), provided that an attorney was absolutely prohibited from testifying to communications from his client unless the provisions of the statutes *"are expressly waived upon the trial or examination by . . . the client. . . . The waivers herein provided for must be made in open court, on the trial of the action or proceeding, and a paper executed by a party prior to the trial providing for such waiver shall be insufficient as such a waiver."* There is an express provision that permits attorneys to testify in will contests as to the preparation and execution of the will offered for probate. It is thus apparent that the New York statute, unlike our own statute, since 1877 is no longer declaratory of the common law, and the New York decisions are distinguishable because of the difference in wording between the New York and Wisconsin statutes.

In the instant case, the objector Holty claims as a legatee of testator, and therefore, under the authorities hereinbefore

cited, the former wills of testator in the possession of Attorney Meissner were not inadmissible as privileged communications. They apparently were not offered by Holty on the question of undue influence, but in order to establish that Holty took more under a former will than he did under the will and codicil admitted to probate. Such former wills therefore would be material evidence on such issue. This court stated in *Estate of Buffington* (1946), 249 Wis. 172, 174, 23 N. W. (2d) 517:

"One must have some interest in the disallowance of a will in order to object to its probate. An heir at law might do so, if he would receive more by descent in case the testamentary disposition were not to be established. . . . The appellant, however, was not an heir at law of Fannie E. Buffington. *She also would have been entitled to object to the will and codicil offered for probate had she been able to offer a prior will for probate containing a more favorable provision for her.*" (Emphasis supplied.)

I am authorized to state that Mr. Justice FAIRCHILD joins in this concurring opinion.

GEHL, J. (*dissenting in part*). The majority say that Attorney Meissner should have been permitted to testify as to the execution of the prior wills; that the privilege afforded by sec. 325.22, Stats., must be deemed to have been waived by testator's act of having the attorney subscribe as an attesting witness. *McMaster v. Scriven*, 85 Wis. 162, 55 N. W. 149, is cited. That case recognizes the rule declared in other cases decided by this court that in a contest upon a will an attorney who has prepared the will and attests its execution should, for reasons of public policy, be permitted to disclose the circumstances attending and the fact of its execution. The proper administration of justice requires that he be allowed to testify in order that the real will of the testator may be carried out according to his intention and as expressed in the instrument offered for probate.

In none of the cases considered by this court, and where the testimony of an attorney who had drawn and attested the execution of a prior will had been received, does it appear that objection was made to the offer of his testimony. In those cases the issue was whether the will offered for probate was the result of undue influence and the trial was upon that issue. We have not yet reached that issue in this case nor had the trial court. Before the contestant may be heard to challenge the propounded will he must make a satisfactory showing by competent proof that he was named as a beneficiary in a prior will. *Estate of Buffington,* 249 Wis. 172, 23 N. W. (2d) 517. Holty offered as proof of his interest the testimony of Attorney Meissner that he had prepared and attested the execution of the prior wills and demanded that Mr. Meissner produce them.

Thus, the real question now before the court is whether in a proceeding brought by one who has not otherwise shown an interest in the estate the waiver of privilege extends to an attorney who had prepared and attested the execution of wills previously revoked by the testator.

One who makes a will knows that to make it effective it must be published; in fact, he does it for that purpose. He is presumed to know, also, that those whom he requests to attest the execution of the will, will be called upon to give testimony as to its execution. *Will of Downing,* 118 Wis. 581, 95 N. W. 876; *Will of Hunt,* 122 Wis. 460, 100 N. W. 874. That is the basis for the rule which permits a subscribing witness, be he a layman or the testator's attorney, to testify as to the circumstances surrounding execution of the will offered for probate.

The reason for permitting disclosure disappears, however, when the testator revokes the will. There is then nothing which requires publication. By the act of revocation he withdraws the waiver of privilege. Indeed, he may have revoked the will for the particular purpose of closing the mouth of his attorney. It is not too difficult to imagine a situation in which a person might at one time have been disposed to make

another his beneficiary. Subsequently, for reasons good or fanciful, but satisfactory to him, his attitude toward the other person is changed and he decides to cut off the other person and that it be done without the knowledge of the other even after the testator's death, for which he may also have reason —good or fanciful, but satisfactory to him. Should his attorney under those circumstances be permitted to violate the confidence of his client? Certainly he should not, at least until after the subsequent will has been made ineffective and it becomes necessary to ascertain the contents of and the circumstances attending the execution of the prior instrument, or until the dissatisfied person has established his right to attack a later will.

It must not be overlooked that we are not dealing here with a will contest as was the fact in some of the cases cited by the majority. We have here nothing except the preliminary question whether the objector's status is such as to entitle him to challenge the instrument offered. If and when he has established such status he may proceed with his attack. Then and not until then does the rule apply that former wills containing provisions inconsistent or consistent with those of the will in contest may be received in evidence. It is then that the contents of former wills may be material.

I am unable to subscribe to a declaration that a stranger to the testator, one who would not take under the laws of intestacy, may proceed upon a "fishing expedition" and, by permitting a testator's attorney to violate the confidence of his client, to establish the possibility that he was named as a beneficiary in an earlier will and thereby qualify himself to challenge the instrument offered for probate.

It is urged that, although the attorney may be precluded from testifying as to his conversation with the deceased testator, he still should be permitted or required to produce the paper itself; that the revoked will speaks for itself. The will is the written expression of the testator's communication to his attorney. It is "in spirit and effect the communication from the client to the attorney." *In re Cunnion's Will,* 135

App. Div. 864, 868, 120 N. Y. Supp. 266, "if the instrument in question was not a communication from his client, it was 'the result of the communication' and the 'reason and spirit' of the situation requires him to protect that communication by not disclosing it by producing the instrument for the benefit of those who seek to destroy the effect of his client's later testamentary efforts." *In re Hurin,* 59 Ohio App. 82, 84, 17 N. E. (2d) 287.

It appears to me that the majority is more concerned with the rights and hopes of those who seek the property of a decedent than it is with the right of one to dispose of his property at his death as he chooses and with his right to assume that he may communicate freely with his attorney without fear of disclosure.

I do not disagree with the majority that a new trial should be had. It is possible that the contestant has competent proof to establish his right to contest the propounded will. The record does not disclose that he was given opportunity to offer it. I am unable to agree with the majority that Mr. Meissner should be required to testify or to produce documents as requested by the objector.

I am authorized to say that Mr. Justice BROWN joins in this dissent.

The following memorandum was filed June 3, 1952:

PER CURIAM (*on motion for rehearing*). Counsel for respondent in his brief on motion for rehearing, states that the opinion of the court is not clear as to what wills of the testator Attorney Meissner will be required to produce and testify to with respect to the same. We had assumed that it would be clear to anyone reading our opinion that our ruling was that because Attorney Meissner acted as attesting witness to the decedent's contested will, he should be required to testify to any relevant and material matter regarding such will, including any former wills in his possession.

Motion for rehearing denied with costs.