ESTATE OF BRZOWSKY: BRZOWSKY, Appellant, vs. BROWN and others, Respondents.*

*September 9—October 5, 1954.*

---

* Motion for rehearing denied, with $25 costs, on December 7, 1954.

512

For the appellant there were briefs by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Quincy H. Hale.*

For the respondents there was a brief by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Robert D. Johns.*

FAIRCHILD, C. J.   This is an action by plaintiff, Carl Brzowsky, against the defendants, Lucy Brown and William Boma (the latter individually as executor of the alleged will of Charles Brzowsky and as general guardian of Charles Brzowsky, incompetent), to declare the proposed will of Charles Brzowsky, deceased, dated January 16, 1947, void and deny the same to probate; to disallow the guardian's final account as to certain expenditures; to cancel a deed dated January 23, 1947, from Charles Brzowsky, as grantor to Lucy Brown as grantee and declare the same void; for specific performance of a deed conveying certain real estate;

for damages by reason of the guardian's sale of certain real estate previously deeded by Charles Brzowsky to plaintiff; and for such other relief as the court might deem just and equitable.

The probate of a will is a matter of public concern, and the trial court, in considering such a matter, should bring to itself proper evidence in order to make a determination of issues raised. Inasmuch as the key to the solution of most of the problems arising out of the issues raised by the dispute between the parties, is the validity or invalidity of the alleged will of Charles Brzowsky proposed for probate, our consideration will be of the alleged prejudicial error on the part of the court in excluding material and relevant evidence and in overlooking patent facts appearing in the record as those errors bear upon the several claims presented to the court.

First. Certain instruments purporting to be copies of wills of Charles Brzowsky and his wife, drawn by Attorney Schneider, were offered in evidence. It is claimed that he drew said instruments in accordance with instructions from Charles Brzowsky and his wife on January 3, 1938. The copies were not signed, and it is not known what became of the original copy. In this connection there appears the following notation of receipt in the county court: "No. 1320. Name: Brzowsky, Charles and Elizabeth. Title: Received the above will Jan. 3, 1938." The copies of the purported wills offered in evidence as prepared by Attorney Schneider, show, among other things, that three parcels of real estate were devised to Carl Brzowsky, and in addition provided that the "residue and remainder of my property, of every kind and nature, real, personal, or mixed, I give, devise, and bequeath to Carl Brzowsky, my son;" and the will appoints Carl Brzowsky as executor. By the same will Lucy Brown was given one parcel of property. The court ruled out the testimony of Attorney Schneider in response to an objection on respondent's behalf as follows: "Objection as there is no

proof as to whether or not they [the purported wills] were executed or deposited anywhere." Respondent further objected on the grounds that "We can't assume that they were executed" and the court said: "I think it is very speculative." On behalf of appellant, Mr. Hale stated: "If the court please, my associate, Mr. Sheehan, states that I haven't made the purpose of this offer clear to the court. We are offering not to prove that it was executed. I think it is a fact that the same day they were deposited in this court as the joint wills by these people. It is not a stretch of the imagination that these are the wills. We are offering these wills to show the continuing disposition of these people to give their son, Carl Brzowsky, three parcels of real estate pursuant to the evidence brought out this morning and one to Lucy Brown. We are offering to show proof of the intended expression of these people and that that expression continued until after the death of the mother. When the mother died, the daughter moved in. That is the purpose of our offer."

The court then sustained the objection. This was error. The testimony offered and rejected does not come within the privilege of the statute, sec. 325.22, governing confidential communications between attorney and client. The rule is that the confidential privilege does not apply in litigation, after the client's death, between parties all of whom claim under the client; and so where the controversy is to determine who shall take the property of the deceased person by succession, and where both parties claim under him, neither can set up a claim of privilege against the other as regards communications of the deceased with his attorney. 70 C. J., Witnesses, p. 438, sec. 587; 58 Am. Jur., Witnesses, p. 284, sec. 505. In a concurring opinion by Mr. Justice CURRIE in *Estate of Landauer*, 261 Wis. 314, 321, 52 N. W. (2d) 890, 53 N. W. (2d) 627, he called attention to the many authorities holding that in litigation between heirs, devisees, and legatees, all claiming through the testator, or by inheritance

under intestacy statutes, or through a last will and testament, the rule of privilege of communication between testator and his attorney cannot be invoked by one party against another to exclude such communications which are material to the issues involved. In *Estate of Smith,* 263 Wis. 441, 447, 57 N. W. (2d) 727, this court quoted from *Russell v. Jackson,* an English case found in 9 Hare, 387 (68 Eng. Reprint 558), the same quotation appearing in *Will of Downing,* 118 Wis. 581, 592, 95 N. W. 876, as follows:

" 'The reasons of the rule which protects from disclosure communications made in professional confidence apply in cases of conflict between the client or those claiming under him, and third persons, but do not apply in cases of testamentary disposition by the client as between different parties, all of whom claim under him. The privilege does not belong to the executors as against the next of kin, but, following the legal interest, is subject to the trust, and incident to which the legal interest is subject.' "

This is but an expression of the common law with respect to the application of the rule of privileged communications between attorney and client in litigation arising after the death of a client. Thus, the communication in the instant case, not being privileged, and, being material, should have been received. The appellant is entitled to the benefit of the evidence in question because, in the light of Attorney Schneider's testimony a different result as to undue influence is probable. That evidence, together with evidence of other instruments admitted, tends to show that the deceased had long entertained a plan for distribution of his estate, which plan, for some reason, was suddenly departed from. The evidence excluded by the trial court is, therefore, proper evidence for the court to give consideration to in passing upon the ultimate facts and in determining its final judgment. It is considered that it was prejudicial error not to have said evidence before the court when it was weighing all the evidence with

respect to a lawful execution of the will now presented for probate, especially in connection with a deed which most decidedly disrupted a long-entertained plan for the disposition of the testator's property by visiting the burden of ademption entirely on appellant.

The second error arises in connection with two deeds drawn February 9, 1942, and deposited with the county judge on February 4, 1943. These deeds, consistent with the purported will of 1938, deeded to the son Carl three parcels of real estate, including the homestead. The deeds had been on deposit approximately four years, when, in 1947, the son-in-law, who was then guardian, moved the county court to deliver these deeds to him. On July 8, 1947, there was a hearing on that motion, and in these proceedings, Charles Brzowsky, whose will is on review here, was sworn and examined by attorneys for both parties. Because of the mental confusion revealed by Charles Brzowsky at the hearing, the county court refused to hand over the deeds to the son-in-law. Yet it is undisputed that at the time of the hearing, Lucy Brown and her witnesses and attorney agreed that Charles Brzowsky's mental condition was the same as it was when he signed the will on January 16, 1947, and when he signed a deed and bill of sale in favor of his daughter Lucy Brown on January 23, 1947. The testimony of the father at the hearing was offered on behalf of appellant in this trial to show what the mental condition of Charles Brzowsky was on July 8, 1947. The trial court was in error in excluding this testimony because it has a definite bearing on the issues here involved. The statute covering the matter, sec. 325.31, reads as follows:

"The testimony of a deceased witness, . . . taken in any action or proceeding, . . . . shall be admissible in evidence in any retrial, or in any other action or proceeding where the party against whom it is offered shall have had an opportunity to cross-examine said witness, and where the issue upon

which it is offered is substantially the same as the one upon which it was taken."

From a reading of appellant's testimony and a careful examination of the bankbooks which are a part of the record, we find that the evidence does not permit the acceptance as sound of the court's observation in his memorandum decision where he said: "On cross-examination the plaintiff admitted that for a long period of time he was unemployed or employed as a WPA worker. Certainly during those periods he contributed nothing toward those funds. Only very general and meager information was given regarding any deposits of funds made from the farm income. At no time were any specific amounts shown either as to the amounts which the plaintiff and his wife contributed to these accounts or as to withdrawals for personal reasons and personal expense of the plaintiff and the members of his family."

As to employment, the appellant testified that he worked at Waupun from 1929 to 1934. From 1935 to December 5, 1937, he worked at a construction job for Nowlin Brothers of Minneapolis, earning $6 a day for the first six months, and $9 a day for the rest of the time he was on that job. In 1936 his wife's father died, and she inherited one-fourth interest in a farm of 160 acres, as well as "shares, cash, and bonds" from her father's estate. In the course of time appellant bought out the other three-fourths interests, and "from December 5, 1937 to July 1, 1940" he and his wife were getting rent for the farm. He testified that "The lowest we got was $850." In 1940 appellant went into the tavern business and "made all the way from $1,000 to $8,000," this in addition to income from the farm. Also, during all these years appellant was getting his rent free for services performed by him in connection with his father's properties. Appellant testified that his father never contributed to the support of him or his family.

The plaintiff relies on an alleged verbal agreement made between him and his father and mother whereby plaintiff was to pay the taxes and take care of the properties, and the parents were to leave a will giving him three of the four parcels of real estate and all of their personal property. The plaintiff, however, was barred from proving such alleged contract by reason of the fact that he had no testimony of disinterested third-party witnesses to establish same, and his own testimony was incompetent because of the invoking of the "dead-man's statute." It is plaintiff's contention on this appeal that if the alleged contract is not enforceable, then he is entitled to recover from the estate the amount of his expenditures for taxes. The bankbook had for some time previously been in the name of all three, *i. e.*, Carl Brzowsky, Elizabeth Brzowsky, and Charles Brzowsky. In 1934 there were certain deposits, and the taxes were paid, and the balance in the account at the end of the year was $197.38. In 1935 the sum of the deposits amounted to $3.81, and no taxes were paid. But in 1936 there was a deposit of $500 which was identified by appellant as being a check from the farm, indorsed to him by his wife. (This was the year that the wife inherited a share in the farm.) It is significant that in all the years from 1936 through 1943 there was but one withdrawal a year, and for each of the years from 1937 through 1943 such withdrawal was for the amount of the tax for that year. In 1936 the single withdrawal was for $465, an amount which would approximate two years' taxes, *i. e.*, taxes for 1936 and unpaid taxes for 1935. There is, moreover, nothing to show that the unpaid taxes of 1935 were made up by withdrawals for subsequent years.

On June 5, 1943, Charles Brzowsky, the testator, who had suffered a stroke in 1936 and was, in 1943, in his eighties, drew a check for $175 with which to buy a safety cycle for himself. His wife became alarmed and called her son, Carl. Shortly thereafter it was decided that the bank account, which

had formerly been in the name of both parents and their son, Carl, should be changed to a two-way account in the name of Carl and his mother, Lizzie Brzowsky. On June 5, 1943, after the withdrawal of $175 by the father, there was a balance in the three-way account of $1,392.07. On June 8, 1943, a new book was issued in the names of Carl Brzowsky and Lizzie Brzowsky only; and on that date the old, three-way account book shows a "withdrawal" in the sum of $1,392.07. At this point there appears to be some confusion in the testimony, but the fact is definitely shown on the face of the bankbook that the amount of $1,392.07 is entered in the new two-way account as a "deposit" on June 8, 1943, the same date it was withdrawn. This amount was never subsequently withdrawn as a lump sum, nor was there ever withdrawn any large amount which would approximate it.

The entries in the bankbook continue along a similar pattern for the years 1944–1947: No withdrawals for taxes for 1944 or 1945. Normal amount of taxes paid in January of 1946 and a double amount for taxes in December, 1946.

As said in appellant's reply brief, the income of the parents was $60 per month. "Both had to live on that. . . . It is admitted that the defendant daughter, Lucy Brown, and her husband never contributed a penny to the parents' support." How, then, could they have deposited such large lump sums as $500 on September 4, 1936, $535 on May 8, 1937, $1,250 on August 14, 1941, or $670 on June 4, 1946? It is to be noted that these deposits coincide in time with the periods in which appellant was either earning a substantial income, or when his wife inherited from her father. Whether or not he could have contributed to the fund during certain periods, if he made up the lapse in other years at times when he could contribute and accordingly paid both current and back taxes, he is entitled to his claim for payment of taxes made over the period of years. In addition to the taxes paid, appellant with-

drew $550 from the account on January 13, 1947, to pay for his mother's burial expenses, and he has a receipt for this as well as certain hospital expenses.

It is apparent to us that the significance of the periods of earnings and employment of appellant and the facts shown by the bankbooks was not fully considered by the trial court. We, therefore, consider that there must be a new trial on all issues involved.

*By the Court.*—Judgment reversed, and cause remanded with instructions to grant a new trial.

The following opinion was filed December 7, 1954:

PER CURIAM (*on motion for rehearing*). We do not find it necessary to review at length the points raised by the motion for a rehearing or to do other than to say that respondents' contention that the issue of the mental competency of the testator was not before this court but only the issue of undue influence is not well founded.

One of the four essential elements which must be established in order to upset a propounded will on the ground of undue influence is susceptibility of the testator to influence by the person having the opportunity to exercise undue influence. *Will of Ehlke,* 244 Wis. 115, 121, 11 N. W. (2d) 497, and other cases digested in 16 Callaghan's Wis. Dig., under Undue Influence, p. 804, sec. 1. It is pertinently stated in 57 Am. Jur., Wills, p. 261, sec. 356: "A showing of impaired mental powers or a clouding of the intelligence of the testator makes it easier to substantiate a charge of undue influence." Therefore, the mental condition of the testator at the time he executed the propounded instrument is material to the issue of undue influence.

Our attention is called to a portion of the opinion at which we said that $500 was deposited in 1936 and followed with

a parenthetical statement, page 519, "(This was the year that the wife inherited a share in the farm.)" The $500 was deposited in 1936. The error is in connecting that deposit with the death of the father-in-law, which occurred in 1926.

Rehearing denied with $25 costs.