Estate of Breese: Breese, Executor, Appellant, v. Bennett, Respondent.

*May 6—June 2, 1959.*

For the appellant there was a brief by *Rogers & Owens* of Portage, and oral argument by *Phillip Owens* and *Bruce J. Rogers*.

For the respondent there was a brief and oral argument by *Charles J. Drury* of Portage.

HALLOWS, J. The two issues on this appeal are: (1) Does the word "issue" as used by the testatrix in paragraph 6 of her will include the adopted children of her deceased brother, and (2) whether the testimony of conversations between the testatrix and her attorney, who drew her last will and prior wills, is admissible in evidence to ascertain her intent in the use of the word "issue."

In construing a will the purpose of the court is to ascertain the intent of the testator as it is expressed in the full and complete will read in the light of the circumstances sur-

rounding the testator at the time the will was executed. 2 Page, Wills (lifetime ed.), p. 804, sec. 918; *Will of Parker* (1956), 273 Wis. 29, 76 N. W. (2d) 712.

A will, of course, speaks as of the time of the death of the testator, but no change in the circumstances surrounding the testatrix took place, between the time of the execution of the will and her death six years later, which has any material bearing on the ascertainment of the intent of the testatrix in this case. Language in a will is used by a testator in reference to known surrounding circumstances. Specific words and phrases used by one testator in view of particular circumstances may have a materially different meaning or at least a different shade of thought content or of meaning than the same phrases or words used by another testator under different circumstances.

Words are but arbitrary verbal or written containers carrying such thought or meaning as is placed therein by their user. The construction of a will by a court is the ascertainment of that content or the meaning of the words, *i. e.,* the intention of the testator. To do this the court attempts to place itself in the position of the testator when he made his will and to consider the use of the words in relation to the surrounding circumstances. *Will of Ehlers* (1913), 155 Wis. 46, 143 N. W. 1050; see also *Will of Klinkert* (1955), 270 Wis. 362, 71 N. W. (2d) 279. In doing so the court is bound by the rules of evidence and various rules of construction. The phrase "surrounding circumstances" normally does not include conversations the testator had with his attorney unless the words used create an ambiguity in the will and the privileged communications are otherwise admissible.

Whether the adopted children of the deceased's brother in this case are included in the word "issue" as used by the testatrix is a matter of her intention. In *Lichter v. Thiers*

(1909), 139 Wis. 481, 488, 121 N. W. 153, this court said:

"Now whether a will in favor of the children of any particular person means adopted children as well as children of the blood of such person, depends upon just what the testator intended, and that may include or exclude adopted children according to circumstances. There is no very arbitrary rule on the subject, except that the testator's intent must govern."

What were the controlling circumstances surrounding the use of the word "issue" in the disputed phrase?

"In the event that any of my brothers shall die, then such income shall thereafter be divided between the survivors of them, provided that if any of them shall die leaving issue surviving, the share of the brother so dying shall thereafter be paid to such issue by right of representation. If the issue of any or either of my said brothers shall become extinct during the lifetime of any of my said brothers, the share or shares of the income from such trust previously payable to such issue shall be distributed to the surviving brothers, and the issue, by right of representation, of any brother who shall have died."

At the time of the use of this language Mary Breese had three brothers living. One brother, Rodney, had a son of his blood and another brother, William, had two adopted children. Llewelyn, the third brother, had no children. Considering the ages of the brothers it was not likely that any of them would have any more children of the blood. By referring to the issue of any brother who should die and the issue of any or either of her brothers becoming extinct the testatrix could only mean to include in the word "issue" the then adopted daughters of her brother William. This is the only reasonable meaning the word "issue" can have in the light of the existing circumstances. There is nothing in the

will which would indicate the adopted daughters were not meant to be included in the word "issue."

It is true that the testatrix had a strong family feeling and was bound by family ties but this is not conclusive, nor does it raise an inference that the adopted daughters were not meant by the use of the word "issue." Likewise there is no evidence that ill will existed between the testatrix and the adopted children of her brother which might raise an inference of a motive for excluding such children. All the evidence is to the effect that a friendly and cordial relationship existed between the testatrix and the adopted children of her brother. The use of the word "issue" under these circumstances does not raise any ambiguity in the will.

This construction is not inconsistent with the plan of the testatrix's estate. The first $160,000 of her estate was given to her three brothers as a class. No provision was made for issue, whether that word is construed as being limited to children of the blood or as including adopted children. The fact that the testatrix gave the corpus of the trust to her nephew and to his issue does not raise an inference that the use of the word "issue" in the income clause in respect to any or either of her brothers did not include the adopted children of one brother. The language in the income clause used in connection with the word "issue" is entirely different than the language in the termination of the trust clause.

The prior wills upon which the last will was modeled are of little help in ascertaining the intention of the testatrix. The disputed phrase is traceable to the testatrix's 1936 will. At that time the surrounding circumstances, so far as the adopted daughters were concerned, were substantially the same as at the time of the 1951 will. The changes in the testatrix's will during the years had to do primarily with the elimination of the power of appointment, the gifts to charities in the residuary clause, and the changing of the words "blood relatives" used in the disposition of the corpus of the

trust to the use of the word "issue" in reference to the nephew. This change occurred in the 1946 will. None of these changes show any intention to exclude the adopted children by the use of the word "issue" in the disposition of the income of the trust.

The appellant argues that the testatrix in fact did not intend to include the adopted children in the use of the word "issue" and sought to introduce evidence of conversations between the testatrix and her attorney to the effect that she meant blood relatives by the use of the term "issue." This testimony was offered on the theory of perpetuating the testimony of the attorney and was taken subject to objection. It was not admitted for any other purpose although some of the facts of such testimony are referred to in the trial court's opinion. From this fact the appellant argues the evidence was admitted. We cannot agree.

Since there was no ambiguity in the text of the will, read in the light of the surrounding circumstances, such evidence is inadmissible. While such conversations are usually privileged, such privilege would not apply here where the adopted daughters and the surviving brother Llewelyn both claim under the will. *Estate of Landauer* (1952), 261 Wis. 314, 52 N. W. (2d) 890. See also *Estate of Smith* (1953), 263 Wis. 441, 57 N. W. (2d) 727; *Estate of Brzowsky* (1954), 267 Wis. 510, 66 N. W. (2d) 145, 67 N. W. (2d) 384.

If such conversations were admitted as constituting surrounding circumstances where no ambiguity exists on the face of the will, few wills would be safe from attack. What this court said in *Will of Tousey* (1951), 260 Wis. 150, 154, 50 N. W. (2d) 454, is applicable here:

"A will is a final and a sacred thing and unless its terms present an ambiguity, we are bound by the instrument itself. . . .

"The offer of proof by extrinsic evidence of conversations between the testator and the scrivener was properly refused.

There would be little security in the right to transfer property by will if the meaning could be changed by parol declarations of the testator to scriveners or witnesses."

We have arrived at this construction of the will without reference to any statutes, which in some cases are an aid in ascertaining the testator's intention. The word "issue" is defined in sec. 990.01 (17), Stats. 1957, 42 W. S. A., p. 535, as all the lawful descendants of the ancestor. This section relates to intestacy, not to the use of the word "issue" in a will. Likewise, sec. 238.13, 27 W. S. A., p. 638, using the word "issue" in providing for the descent of a lapsed legacy does not apply. The trial court considered sec. 48.92, as amended July 1, 1956, 6 W. S. A., p. 473, as controlling and removing any ambiguity. In our view of the language of the will and of the surrounding circumstances there is no ambiguity and the resort to sec. 48.92 is not necessary as an aid in the construction of the testatrix's will. Furthermore, sec. 48.92, 6 W. S. A., p. 473, providing an adopted child now takes from and through its adoptive parent, deals with the rule of descent and distribution.

The adoption of children has become so prevalent that such children are looked upon and accepted as the natural children of the adoptive parents by people generally. The word "issue" is often used to include adopted children. In *Estate of Holcombe* (1951), 259 Wis. 642, 49 N. W. (2d) 914, this court gave the adopted child the status of a natural child of his adoptive mother under sec. 322.07, Stats., and he took as such mother's issue under sec. 238.13. In *Estate of Nelson* (1954), 266 Wis. 617, 64 N. W. (2d) 406, an adopted person was given the status of lineal descendant under sec. 322.07 (1) (3). In *Estate of Rhodes* (1955), 271 Wis. 342, 73 N. W. (2d) 602, "natural heirs" was construed to include an adopted daughter. While these cases and statutes are not relied on in this opinion they do reflect

the current thinking of the nature of the relationship and expanded meaning that is now often given to the common-law term "issue."

We conclude that the judgment of the trial court in construing this will should be affirmed for the reasons herein given.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.