In the Matter of ALLEN L. HUGHES, Petitioner, against WILLIAM CASHIN, as Superintendent of the New York State Vocational Institution, Respondent.

Supreme Court, Special Term, Rensselaer County, April 2, 1945.

*Francis Martocci,* petitioner in person.

*Nathaniel L. Goldstein, Attorney-General (Herman N. Harcourt* of counsel), for respondent.

MURRAY, J. Petitioner, an attorney, in this proceeding entitled in the name of his client, seeks an order in the nature of mandamus to compel William Cashin, Superintendent of the New York State Vocational Institution, at Coxsackie, N. Y., to permit him to confer privately with an inmate, Allen Leroy Hughes, confined therein under sentence. He urges that he be permitted to consult with his client without the hearing of a guard or any other person, and further for such other relief in the premises as may seem just and proper to the court.

It is elementary law to obtain relief by mandamus that an applicant must establish a clear legal right thereto. (*Matter of Colonial Beacon Oil Co., Inc.,* v. *Finn,* 245 App. Div. 459, affd. 270 N. Y. 591.) It is an extraordinary remedy and its issuance is to a large extent discretionary. (*Matter of Andresen* v. *Rice,* 277 N. Y. 271, 282.) Even when a clear legal right has been established to such legal process, a court must determine, whether, in the exercise of sound discretion, it should be granted or withheld. (*Matter of Durr* v. *Paragon Trading Corp.,* 270 N. Y. 464, 469.) Mandamus will not issue where

another remedy is available or provided by law. (*Matter of Towers Man. Corp.* v. *Thatcher*, 271 N. Y. 94, 97.)

A writ, now an order in the nature, of mandamus issues to prevent a failure of justice. Such is its ancient office.

Allen Leroy Hughes was duly committed to the Vocational Institution on December 31, 1942, as a juvenile delinquent. Thereafter, on September 23, 1943, he was paroled. He was returned October 25, 1944, as a violator of his parole. William Cashin, Superintendent of the Vocational Institution, has filed with the court an affidavit in which he states that Hughes with three other inmates on December 6, 1944, in an attempt to escape, assaulted a guard. They were indicted by a Grand Jury of Greene County charged with the crime of assault in the second degree. Three of the culprits pleaded guilty in Greene County Court, two of whom were sentenced to Elmira Reformatory and the other to Clinton Prison. Hughes pleaded not guilty. He was tried on the charge. The jury was unable to agree. He is now confined in the institution on a commitment duly made adjudging him a juvenile delinquent.

The Commissioner of Correction of the State of New York is charged with the duty of making rules and regulations not in conflict with the statutes of the State for the government of the institution and management of its affairs. Section 274 of the Correction Law* provides that the Superintendent shall have the management and supervision of the reformatory, of the grounds and buildings, subordinate officers and employees and the prisoners therein and of all matters relating to the government and discipline thereof. He also must make rules and orders not inconsistent with law or with the rules of the Department of Correction *as he may deem proper and necessary for the government of such reformatory and of the officers and employees thereof, and for the employment, discipline and education of the prisoners sentenced or transferred thereto.*

The burden of responsibility for the care, custody, management and supervision of Hughes and other inmates at the Vocational Institution is placed by law entirely with Superintendent Cashin. Unless he has acted in bad faith, contrary to law or in a grossly tyrannical or arbitrary manner, it is not for this court to interfere in the slightest degree as to how or in what manner he shall manage, conduct and administer the affairs of the institution. He is a duly accredited State offici l and a man recognized for his ability as a prison administrator.

---

* Made applicable to the Superintendent of the New York State Vocational Institution by section 334 of the Correction Law.— [REP.

Courts should not substitute their judgment or discretion for that of a duly and regularly appointed, responsible correction administrative official as to whether or not rules of order and discipline adopted by him are suitable and proper. The fact that petitioner's client attempted to escape from custody compels Superintendent Cashin to exercise a high degree of care and to be alert that any and all conferences had between Hughes and other persons be strictly supervised.* It is not for me or any other court to undertake the task of running the prisons in New York State. Under the circumstances the motion of petitioner that he be allowed to confer with his client privately in a room in which no other persons are present is denied.

An appeal to a judge's discretion is an appeal to his judicial conscience. Such discretion must be exercised not in opposition to, but in accordance with, the statutes and established principles of law. It is not as some believe an arbitrary power. It must be exercised wisely and impartially, taking into consideration all the facts and circumstances. It is not unbridled license for an assumption of autocratic authority and should never be exercised for the purpose of giving effect to the will of the judge. It should be used to give effect to the will of the Legislature and the laws and statutes as enacted by the Legislature. The erroneous idea is prevalent more or less that within the personality of a judge there exists power to grant any and all petitions and requests for relief . There is no greater error extant than such misconception of judicial power.

It is conceded that there is a visitor's room in the institution forty-five feet long, where it is possible for petitioner to confer with his client out of earshot of any guard, but under visual supervision. A letter was written petitioner by John A. Lyons, Commissioner of Correction, State of New York, on February 13, 1945, which states as follows: " Mr. Cashin, Superintendent of that Institution, has been directed to communicate with you to interview your client during the regular visiting hours between 8:00 A.M. and 3:30 P.M., or if this is not convenient for you, I have authorized Mr. Cashin to grant you the courtesy of a visit with your client after the regular visiting hours." Certainly, from this letter, this court can conclude nothing other than a desire upon the part of the correction

---

* The Commissioner of Correction's regulations relating to visits to inmates of the institutions within the State Department of Correction (eff. Aug. 1, 1939) provide: " The attorney  *  *  * of an inmate may visit under such reasonable regulations as the  *  *  * superintendent may prescribe." — [REP.

officials to co-operate with petitioner in every fair way in his efforts to talk with his client.

Nothing is shown which justifies petitioner's fears of eavesdropping or of some one overhearing conversations had between him and his client. So far as the rules, regulations and practices in vogue at the Vocational Institution, as to interviews with inmates, this court will not interfere with the discretion of the officials in charge thereof. The court well recognizes the right of a person held for trial to defend himself in person or by counsel. I am fully cognizant of the fact that such right is based on a fundamental principle of justice and must be protected by the trial judge. (*Glasser* v. *United States,* 315 U. S. 60, 71.) It is also equally true that the right to a private interview by a person accused of crime with his lawyer prior to trial is a valuable right, and it is the duty of the court to jealously guard the accused from deprivation thereof.

Petitioner's client cannot be brought to trial again until the third Monday of May, 1945. The County Court of Greene County has full jurisdiction of the indictment returned against petitioner's client. It has the inherent and statutory power to allow an interview or interviews between petitioner and his client in private in the Greene County Jail, under the supervision of the Sheriff of Greene County. Upon proper application and upon notice to the Commissioner of Correction of the State of New York, the County Court of Greene County may execute an order directing the Sheriff of Greene County to take petitioner's client in custody and confine him safely in the Greene County Jail for a reasonable length of time prior to trial on the indictment mentioned herein for the purpose of affording him the right to confer with his lawyer privately. Petitioner has an adequate remedy at law.

For the reasons stated, petitioner has not shown a clear legal right for an order in the nature of mandamus, and accordingly, his motion therefor is denied.

Submit order in accordance herewith.