George Tilzer, J.
By this proceeding the Acting Commissioner of Investigation seeks an order committing a witness, an attorney, to jail for refusing to answer seven questions put to him in a private hearing held by the Acting Commissioner, and punishing the witness for contempt. The witness-attorney refused to answer the questions, claiming that his lips were sealed by the provisions of law governing confidential communications between an attorney and client.
The Acting Commissioner, or Commissioner as he may be referred to, urges that the questions in issue did not concern communications between the attorney and his client or advice given by the attorney, but that the questions related to transactions between the attorney and one or more third persons in which the attorney was acting not as a lawyer but in the capacity of an agent or negotiator.
The attorney-witness, on the other hand, asserts that the Commissioner, unknown to the attorney, obtained a transcript of a conversation had in the privacy of the counsel room of the Westchester County Jail between the attorney and his client, Joseph Lanza; that the Commissioner, mindful of the tainted source of his information, endeavored to legalize that information by purporting to have it come from the lips of witnesses whom he subsequently called to testify; that the attorney was *412 one of such witnesses and that the seven questions stemmed from the confidental talk he had with his client. In the circumstances, the attorney declined to answer the questions, claiming that the questions were so closely connected with and appertaining to the lawyer-client relationship that to answer the questions would be an infringement of that relationship.
If we are to enjoy the benefits of a free society, we must have guaranteed to us the right of freedom of thought and of speech. Freedom of speech, of necessity includes the right to be free from unwarranted secret listening or interference by others. The privacy of all free citizens is a fundamental and basic right. Without resorting to antiquity, we find in the Magna Carta a guarantee of security to all the men in that famous clause 39 that “No freeman shall be taken or imprisoned, or disseised, or outlawed, or banished, or any ways molested, nor will we pass upon him, nor will we send upon him, unless by the lawful judgment of his peers, or by the law of the land.” Blackstone in his Commentaries (4 Blackstone’s Comn., p. 168) defining the offense of eavesdropping, says: “Eavesdroppers, or such as listen under walls or windows or the eaves of a house to hearken after discourse, and thereupon to frame slanderous and mischievous tales, are a common nuisance.” Corpus Juris Secundum says that in English Criminal Law eavesdropping was “ the offense of listening under walls or windows, or the eaves of a house, to hearken after discourse, and thereupon to frame slanderous and mischievous tales ” (28 C. J. S., Eavesdropping, p. 826). Bishop says that eavesdropping “ consists in the nuisance of hanging about the dwelling house of another, hearing tattle, and repeating it, to the disturbance of the neighborhood ” (State v. Pennington, 40 Tenn. [3 Head] 299, 300, citing 2 Bishop on Criminal Law [2d ed.], § 274).
Words and Phrases (Vol. 14, p. 111), defines an eavesdropper as “ one who is secretly a listener to conversations between others, and would include a person who merely overheard communications or conversations between a husband and wife ” (Selden v. State, 74 Wis. 271). Eavesdropping was an indictable offense at common law. (Pavesich v. New England Life Ins. Co., 122 Ga. 190; State v. Davis, 139 N. C. 547, 51 S. E. 897). Various of our States have recognized the right of privacy even in the absence of statutory regulation making its breach an indictable offense (Kerby v. Hal Roach Studios, 53 Cal. App. 2d 207; Commonwealth v. Lovett, 4 Clark [Pa.] 5). The laws of New York made eavesdropping a crime by section 721 of the Penal Law, enacted in the year 1881 (ch. 676).
*413 The right of counsel guaranteed by the Constitution of the United States has never been more fully recognized than it is at the present time by the Court of Appeals of our State. The ancient writ of coram nobis, long dormant, was revivified by the court following the cases of Matter of Lyons v. Goldstein (290 N. Y. 19), Matter of Morhous v. Supreme Court (293 N. Y. 131), Matter of Hogan v. Supreme Court (295 N. Y. 92) and People v. Gersewitz (294 N. Y. 163). After these cases were decided in 1943, the courts were immediately flooded by applications in the nature of coram nobis. The basis of a good portion of these applications was the failure of the defendants to be represented by counsel. The right of counsel, of course, includes the right to effective representation by counsel and is utterly impossible, without privacy and secrecy.
The privilege of attorney and client is the oldest of privileges for confidential communications. The policy of the privilege today is grounded upon the necessity of providing for the client’s freedom of apprehension in consulting his legal adviser. This is assured by removing the risk of disclosure by the attorney even at the hands of the law. The client who has made a clean breast of it does so safely, knowing that his confidences will be kept secret. The client and the client alone may waive the privilege and consent that his disclosures be made known.
The Commissioner would limit the privilege, in the words of our statute (Civ. Prac. Act, § 353) to a “ communication ” received from the client and to the “ advice given ”.
While the right of privileged communications between lawyer and client originally arose and extended only to communications actually made in a pending suit, our highest courts have broadened this view to embrace all communications. In the case of Bacon v. Frisbie (80 N. Y. 394, 399) the Court of Appeals said: ‘ ‘ All communications made by a client to his counsel, for the purpose of professional advice or assistance, are privileged, whether they relate to a suit pending or contemplated, or to any other matter proper for such advice or aid: (Britton v. Lorenz, 45 N. Y. 51.) And whenever the communication made, relates to a matter so connected with the employment as attorney or counsel as to afford presumption that it was the ground of the address by the client, then it is privileged from disclosure: (Turquand v. Knight, 2 M. &. W., 98.) ”
The court further said (p. 400): “ The principle upon which these communications are protected from disclosure applies to every attempt to give them in evidence, without the assent thereto of the person making them. That principle is, that he who seeks aid or advice from a lawyer ought to be altogether *414 free from the dread that his secrets will be uncovered; to the end that he may speak freely and fully all that is in his mind. Now this principle is not wholly kept, if what is thus said may be told without his assent, though to the immediate harm or help of another only. The disclosure is made, his secret is bruited, and he has it no longer in his power to stay it from use by any in strife with him, just as much when given in testimony against another as against him. It is not, indeed, put in evidence directly against him to his immediate harm, but that thing, the knowledge of which was confined to him and his adviser, has become matter of common knowledge, and may be the cause of his harm. The effect may not be so direct and immediate, yet it is a possible effect, and the foreseen possibility would press upon his lips, when in consultation with his legal adviser, nearly as heavily as if testimony of what he showed to his counsel could be called out in evidence against himself. A branch of the rule, to wit: that the communication is to be inviolate, though no suit be begun or contemplated, shows that though there is no present opportunity of the use of evidence of it against him, the communication is made under the seal of professional confidence. And it is but a further natural growth of the rule, that the communication is to be privileged from being put in evidence for or against another, lest it, by means of the knowledge of it thus given, be used to his harm for the sustaining or defense of a suit thereafter begun in which he may be made a party.”
What was said by the court in Coplon v. United States (191 F. 2d 749, 757) is applicable to the case at bar:
“We are confronted, however, with another and a much more serious question with respect to the government’s alleged wiretapping. In support of her motion for a new trial, the appellant charged that Bureau agents intercepted telephone conversations between her and her counsel, both before and during her trial in the District of Columbia.
“ If this occurred, it was a violation of the appellant’s constitutional rights. The Fifth Amendment enjoins that no person be deprived of life, liberty or property without due process of law. Such due process includes the right of one accused of crime to have the effective and substantial aid of counsel. Neufield v. United States, 1941, 73 App. D. C. 174, 182, 118 F. 2d 375, 383. Moreover, the Sixth Amendment provides that ‘ In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.’
“It is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him. ’ ’
*415 And further at page 758:
“ In New York it has been said that: ‘ * * * It is also equally true that the right to a private interview by a person accused of crime with his lawyer prior to trial is a valuable right, and it is the duty of the court to jealously guard the accused from deprivation thereof. ’ Hughes v. Cashin, 1945, 184 Misc. 757, 54 N. Y. S. 2d 437, 440-441.
“ Other state cases to the same effect are State v. Collett, Ohio App. 1944, 58 N. E. 2d 417; McBride v. State, 1932, 121 Tex. Cr. R. 549, 51 S. W. 2d 337; Snook v. State, 1929, 34 Ohio App. 60, 170 N. E. 444; Ford v. State, 1929, 121 Ohio St. 292, 168 N. E. 139; Thomas v. Mills, 1927, 117 Ohio St. 114, 157 N. E. 488, 54 A. L. R. 1220; Sanderson v. State, 1926, 105 Tex. Cr. 198, 287 S. W. 251; Turner v. State, 1922, 91 Tex. Cr. 627, 241 S. W. 162, 23 A. L. R. 1378; State ex rel. Tucker v. Davis, 1913, 9 Okl. Cr. 94, 130 P. 962, 44 L. R. A., N. S. 1083.”
Privacy has been defined as follows: ‘ ‘ The extent of the requirement of the statute and of the judgment of the court is that the attorney be granted ‘ absolute privacy of consultation. ’ ‘ Privacy ’ means ‘ the state of being in retirement from the company or observation of others; concealment of what is said and done; secrecy, ’ while a consultation is ‘ a deliberation of two or more persons on some subject.’ ” (Webster’s New International Dictionary, citing State v. District Court, 85 Mont. 215, 224.)
In construing the law one must bear in mind the command of our Court of Appeals that the statute is to have a broad and liberal construction to carry out its policy. Such policy, as has been said, is to encourage the person consulting an attorney to state all the facts of his case without fear that his statements may be possibly used against him. If the client in ignorance of what is material or relevant discloses or injects matter foreign to his case, the fact or statement is not thereby excluded from the privilege. The circle of protection is not so narrow. If the fact or statement is made as part of the purpose of the client to obtain advice, the privilege attaches thereto. So tested, it is clear that the questions put to the attorney dealt with communications received from the client concerning his possible defense as an alleged parole violator. The attorney, even if willing to answer the questions, could not do so, for the privilege was his client’s, not his own.
The long-standing policy of this State has been to encourage uninhibited communications between attorney ^ and client. Whether the person be weak or strong, wise or foolish, a man of influence or one utterly helpless, he nevertheless has the right *416 of the effective assistance of counsel. “ Effective assistance of counsel ” includes the right “ to consult counsel in private, without fear or danger that the People, in a criminal prosecution, will have access to what has been said, either openly, by forcing the attorney to divulge what he has learned, or secretly, by the use of a concealed recording device or the planting of a human eavesdropper. (See Matter of Fusco v. Moses, 304 N. Y. 424; Coplon v. United States, 191 F. 2d 749, certiorari denied 342 U. S. 926.) Intrusion upon a client-lawyer conference, whether in the privacy of an office or at the counsel table in court, contravenes our sense of traditional fair play and due process and is particularly offensive where defendants have sought to keep their conversations and communications secret and confidential by resort of a foreign language.” (People v. Cooper, 307 N. Y. 253, 259, Fuld, J.; see, too, People v. Shapiro, 308 N. Y. 453, 459.) The rule pertaining to privileged communications must be zealously guarded. Any invasion of the right should be condemned, “ the more emphatically if planned in advance ” (concurring opinion, People v. Cooper, p. 262). It is indeed disturbing that after a lapse of about a decade following the condemnation by the Court of Appeals that this condition should exist in the very place where it was condemned so long ago. Such practices are particularly revolting when it is the Government that is guilty of a violation of the right to consultation in private, and seeks to compound thé wrong by compelling the attorney to break his vow of silence. The secrecy imposed upon the attorney may not be lifted save by his client. What offends common and public decency should never be tolerated. Morality, and all incidents of morality are essential; as justice to the citizen; and personal liberty. Where speech is not free, where any means of communication is tampered with, where liberty is attacked in the privacy of our everyday life, then it can be said that rights and blessings guaranteed by the Constitution are not secured.
The scepter of justice should not be passed from the court to those who, in contravention to the established law and common decency, seek to destroy or weaken the relationship existing between attorney and client. It is not in support of the attorney's rights; rather it is in fulfillment of a sound public policy. This jurisdictional and' fundamental right should not be narrowly circumscribed, by whatever circuitous route may be attempted. It must be given renewed and added vitality.
Science through its ingenious discoveries has created problems far greater than the conditions sought to be remedied. Interception of telephone conversations by tapping wires is a *417 matter of common knowledge. More recently mechanical devices have been invented which are able to record a conversation. These devices are so small that is is extremely difficult to detect them. They create a problem of grave importance. If we are to permit such conditions to exist, we shall supplant freedom by suspicion and fear. As a matter of public policy all of these devices should be either destroyed or placed under strict supervision.
The Legislature of the State of New York has attempted to control this evil by its recent enactments (see L. 1957, chs. 880, 881). By chapter 881 of the Laws of 1957, an entirely new article of the Penal Law, the Legislature has shown its intention of curbing the mischief involved and of punishing the wrongdoers. The legislative purpose to condemn and eradicate the harm is crystal clear.
The grave and rigorous provisions of article 19 of the Judiciary Law (Contempts) should be reserved for a clear and convincing ease. The power conferred upon the court to deprive a man of his liberty may not be exercised unless it is established that the evidence sought is material, necessary, essential, and above all, in support of the law. The proof, in the instant case, has utterly failed to satisfy the conscience of the court.
The application is denied and the proceeding is dismissed.