KENFORD COMPANY, INC., et al., Appellants, v COUNTY OF ERIE et al., Respondents.

COUNTY OF ERIE, Respondent, v KENFORD COMPANY, INC., et al., Appellants, et al., Defendants.

Fourth Department, January 14, 1977

*Olwine, Connelly, Chase, O'Donnell & Weyher (Hodgson,*

*Russ, Andrews, Woods & Goodyear, Victor Fuzak* of counsel), for appellants.

*Jaeckle, Fleischman & Mugel (John H. Stenger* of counsel), for respondents.

CARDAMONE, J. We are asked to consider whether a party witness at an examination before trial may refuse to answer questions posed to him on the ground that the answers involve information which he obtained from his attorney. He claims that such information is protected from inquiry arising from either the confidentiality of the attorney-client relationship or because the material conveyed was an attorney's work product. We do not believe the conveyed information may be protected upon either theory.

The facts may be briefly stated and are necessary to the setting in which this discovery question arose. Complex litigation resulted from a proposed, but never built, domed sports stadium in Erie County. Plaintiffs, Kenford, inc., brought suit against Erie County in 1971 seeking $90,000,000 damages for defendants' alleged breach of contract because of its failure to build the stadium. Defendants counterclaimed for $3,000,000 alleging that plaintiffs and others conspired fraudulently to induce defendants to authorize the stadium's construction.

After defendant had conducted extensive pre-answer discovery, defendants served an answer to plaintiffs' amended complaint which set forth numerous affirmative defenses and its counterclaim. In October, 1975, with court permission, defendants served an amended answer with counterclaim, a duplicate of the original except that it named certain additional individuals as defendants on the counterclaims. Both the original and amended answers and counterclaims were verified by Louis J. Russo, Deputy County Executive of the County of Erie.

After issue was joined, plaintiffs served a reply to the counterclaim, and on April 15, 1975 noticed for oral examination numerous present and former members of the Erie County Legislature and county officials, including Louis J. Russo. On June 16, 1976 plaintiffs conducted an examination of Louis J. Russo who responded at length to many of the questions propounded by plaintiffs' attorney. However, when questioned respecting specific paragraphs of defendants' counterclaim, he stated that he had no personal knowledge of the facts upon which the verified allegations were based and that

his verification of those paragraphs was based upon information and belief and rested solely upon information provided him by the attorneys for the defendants. When plaintiffs' counsel asked Mr. Russo to disclose the information upon which his verification was predicated, counsel for defendants directed Mr. Russo not to respond.

On June 28, 1976 plaintiffs obtained an order directing defendants to show cause why an order should not be granted pursuant to CPLR 3124 and 3126 striking out the allegations in the counterclaim or, in the alternative, compelling answers to plaintiffs' inquiries. In opposition to the motion defendants submitted affidavits of their attorney, John H. Stenger, and Mr. Russo. Mr. Stenger states that the information sought is the product of extensive discovery efforts conducted by defendants' attorneys including examination of various records and documents of plaintiffs', a lengthy interview with Edward H. Cottrell, president of plaintiff corporation and examinations of Claude F. Schuchter and J. Lloyd Walker, nonparty witnesses. Counsel also claims to have conducted interviews with various other potential witnesses and to have made notes and memoranda with respect thereto. Mr. Stenger's affidavit declares that counsel also researched and reviewed various media reports of events related to this matter and conducted extensive legal research and analysis in preparing their answer and counterclaim. He asserts that the information produced as a result of the foregoing efforts was assembled and analyzed by defendants' attorneys and conveyed to Mr. Russo over the course of two days of meetings with defense counsel and concludes that: "Except for information obtained through discovery proceedings, the information conveyed to Mr. Russo by counsel was either derived from confidential communications between attorney and client * * * or constituted work product of counsel * * * and was material prepared for this litigation either by counsel or on behalf of counsel". Mr. Russo's affidavit recited that at the meeting preceding his verification of the answer: "Counsel candidly informed me of their personal recollections and impressions of witness interviews and depositions, of their analyses and opinions concerning the same, and the factual inferences and conclusions which they had drawn from coordinating the information developed from this variety of sources. Throughout the discussions, legal opinions and conclusions were expressed and the strengths and weaknesses of the case were pointed out". Mr.

Russo stated that he would be unable to distinguish between facts, inferences, opinions and conclusions since no such characterization was made during his conversations with defendants' attorneys. Special Term denied plaintiffs' motion on the grounds that the information sought constituted attorneys' work product protected from disclosure by CPLR 3101 (subd [c]). We disagree.

CPLR 3101 (subd [a]) announces a broad rule of discovery which provides for "full disclosure of all evidence material and necessary in the prosecution or defense of an action". We stated on a previous appeal involving these same litigants that the disclosure provisions of the CPLR are to be liberally construed *(Kenford Co. v County of Erie,* 41 AD2d 586). The phrase "material and necessary" as used in the statute is to be "interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" *(Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 406). Concededly full disclosure must yield at times to other and competing values esteemed under our system of jurisprudence. Thus CPLR 3101 (subds [b], [c], [d]) provide for limited exceptions to the general rule favoring complete disclosure. Under CPLR 3101 (subd [b]), privileged matter, such as that falling within the scope of the attorney-client privilege recognized in article 45 of the CPLR, is unconditionally excepted from discovery. CPLR 3101 (subd [c]) establishes an unqualified privilege from disclosure for the attorney's work product, and section 3101 (subd [d]) creates a qualified immunity for material prepared for litigation. Such material may not be discovered unless the court finds that it can no longer be duplicated and that denying disclosure will result in "injustice or undue hardship" (CPLR 3101, subd [d]).

Respondents' contention that "plaintiffs seek to have a witness * * * reveal the substance of his conversations with his attorneys in the course of the attorney-client relationship" is without merit. It has long been settled that information received by the attorney from other persons and sources while acting on behalf of a client does not come within the attorney-client privilege (5 Weinstein-Korn-Miller, NY Civ Prac, par 4503.01, subd [a]; 8 Wigmore, Evidence [McNaughton rev.], § 2317 (2); *Matter of King v Ashley,* 179 NY 281; *Farr v Newman,* 18 AD2d 54, affd 14 NY2d 183). Neither can the term "attorney's work product" serve as a talisman to bar all

further inquiry respecting the factual underpinnings of the sometimes vague allegations in this counterclaim.[1] In light of the narrow scope afforded section 3101 (subd [c]), it is clear that information and material which would otherwise be discoverable under section 3101 (subd [a]) cannot be shielded from discovery merely because the client has obtained his knowledge through his lawyer's investigative efforts.

Because it affords an unqualified privilege, the commentators agree that the ambit of CPLR 3101 (subd [c]) is to be construed narrowly to include only those materials prepared by an attorney which contains his analysis and trial strategy (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3101:28; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3101.44; 7 Carmody-Wait 2d, NY Prac, § 42:55, p 97; Coven, Work Product Exception to Discovery—The New York Experience, 53 Cornell L Q 98, 102). The Supreme Court has held that the phrase "work product" embraces such items as "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs" conducted, prepared or held by the attorney (*Hickman v Taylor,* 329 US 495, 511). While not binding on them, New York courts have accepted the definition of work product set forth in *Hickman* in determining the scope of subdivision (c) (see, e.g., 3A Weinstein-Korn-Miller, *supra,* pars 3101.44, 3101.47; *Warren v New York City Tr. Auth.,* 34 AD2d 749; *Babcock v Jackson,* 40 Misc 2d 757). Further, in *Hickman* the Supreme Court commented that "A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney" (329 US, at p 504).[2]

With respect to the attorney's work product exemption in New York, the rule is that questions should be answered providing that the witness has the information which enables him to answer, regardless of its source. Generally, an objection

1. For example, paragraph 53 alleges that plaintiffs "and other additional defendants on the counterclaim and other diverse persons not so named" conspired to induce defendants to authorize the construction of the domed stadium". Paragraph 63 alleges that plaintiffs made certain false representations (specified in subpars a through e) to "various County Legislators". Paragraph 81 alleges that plaintiffs did not negotiate in good faith, but they are not told in what manner they exhibited bad faith with respect to the lease negotiations.

2. The Federal courts have followed this interpretation (see, e.g.; *B & S. Drilling Co., v Halliburton Oil Well Cementing Co.,* 24 FRD 1; *Lance, Inc. v Ginsburg,* 32 FRD 51; see, also, *State of Maryland v Baltimore & Ohio R. R. Co.,* 7 FRD 666; *Bernstein v N.V. Nederlandsche-Amerikaansche, etc.,* 11 FRD 48; *Olmert v Nelson,* 60 FRD 369).

that information was obtained by the client or the attorney while he prepared material for litigation should not serve as a protective bar although the particular material prepared need not be shown to the party seeking disclosure. Since the matter which constitutes the lawyer's work product need not be produced, the lawyer for the party being interrogated may be assured that his tactics and theory of the litigation are not revealed in his client's answers. "But information that a client has obtained through his lawyer's work may not be withheld; in this respect, the attorney serves as a fact-gathering agent for the client" (3A Weinstein-Korn-Miller, *supra,* par 3131:02, p 31-493).

In a case strikingly similar to the one at bar an examinee declined to particularize the facts underlying the general allegations of his complaint on the grounds that he had no personal knowledge of the matters alleged and that his verification of the pleading was based upon information supplied by counsel. When the party seeking discovery demanded production of the reports compiled by counsel, the attorney-client privilege was invoked. The court held the claim of privilege unsubstantiated and commented that "The plaintiff may not be excused from furnishing required information on the theory that the facts are known only to its attorneys and that such information in their possession is privileged" *(Mutual Life Ins. Co. N.Y. v Tailored Woman,* 276 App Div 144, 146-147). The court further noted that the "plaintiff might well have ascertained the facts and disclosed such information to the examining party without production of allegedly confidential reports or statements in the files of its attorneys" (p 147).[3]

In this case, a claim of confidentiality and attorney's work product is raised with respect to information obtained by the witness from his attorney. The foregoing analysis demonstrates that the rule which governs this aspect of disclosure is that where material and nonprivileged facts are in the possession of the witness or his attorney, and where production of these facts is necessary to the preparation or defense of the lawsuit, discovery may properly be had.

---

3. Although respondent purports to distinguish this case on the grounds that it was decided before the enactment of CPLR 3101 (subd [c]), we observe that even before the attorney's work product was given statutory immunity from disclosure, "[t]he courts [were] emphatic in holding that the work product of an attorney may not be discovered". (1957 Report of Temporary Comm on Courts, p 477; NY Legis Doc, 1957, No. 6 [b], p 477; see, also, comment, 35 Fordham L Rev 113, 115.)

Accordingly, the order should be reversed and the motion for an order directing Deputy County Executive Russo to respond to questions concerning the factual basis for the allegations contained in the counterclaim should be granted.

MARSH, P. J., SIMONS and WITMER, JJ., concur.

Order unanimously reversed with costs and motion granted in accordance with opinion by CARDAMONE, J.