**In re GRAND JURY SUBPOENA DUCES TECUM DATED MARCH 24, 1983.**

No. M11–88.

United States District Court, S.D. New York.

July 14, 1983.

Obermaier, Morvillo & Abramowitz, P.C., New York City, for movants; Robert G. Morvillo and Robert J. Anello, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., New York City, for government; Kate Stith Pressman, Raymond Levites, Asst. U.S. Attys., of counsel.

LASKER, District Judge.

Movants [1] seek to quash a grand jury subpoena which orders the production of documents used to prepare an amended tax return filed by X Corp. The documents in

1. In the interests of preserving the secrecy of the grand jury's deliberations, the parties will be referred to by pseudonyms or simply as "movants."

dispute were generated by an accountant retained by X Corp.'s counsel, and include the accountant's schedules and his memoranda of interviews with X Corp.'s employees.

Movants assert that the documents are protected by the attorney-client and attorney work-product privileges. The government argues that: (1) the documents are not covered by the privileges asserted; (2) "at least some" of the documents are outside the privilege because they were used to perpetrate a fraud on the Internal Revenue Service ("IRS"); and (3) the privileges have been waived.

The parties have focussed on the issue of waiver because the government contends that there are questions of fact in connection with the applicability of the privileges to the documents and with the use of the documents in perpetrating a fraud and that, moreover, the facts regarding fraud may only be disclosed *in camera*.

The government claims that X Corp. waived its privileges on three occasions: (a) when it submitted its amended tax return; (b) when its accountant filed an affidavit in a civil suit, drawing his conclusions from the data incorporated in the disputed schedules and memoranda; and (c) when it delivered the disputed documents to the District Attorney for New York County in connection with a state grand jury investigation.

Our inquiry is addressed only to the work-product privilege, because, as the parties correctly note, a finding of waiver of the work-product privilege is dispositive of the assertion of attorney-client privilege.

■ The government's contention that X Corp. waived its privilege by filing an amended tax return and by submitting its accountant's affidavit in a civil action is unpersuasive. In neither instance did X Corp. disclose the disputed documents themselves; rather, X Corp. simply made public certain conclusions which it based on the work incorporated in the disputed docu-

ments. No authority has been cited for the proposition that a document loses its privileged nature simply because the owner of the privilege relies on the material contained in the document in making a statement in *another* document.[2]

■ By the mere filing of a tax return, the taxpayer does not agree to disclose to all comers the documentation underlying the deductions claimed. Had the IRS challenged the deduction, X Corp. would then have had the choice of waiving the privilege and supporting the deduction, or asserting the privilege and losing the deduction (and perhaps incurring a penalty). Similarly, had the accountant's affidavit been challenged in the civil action on the grounds that it lacked probative value without the support of the underlying documents, X Corp. would have faced the choice of waiving the privilege and bolstering the accountant's credibility, or retaining the privilege at the risk of failing to convince the finder of fact. In both circumstances, X Corp. retained the choice to disclose or not to disclose; having not disclosed the documents themselves, there is no basis for finding that the privilege was waived in these instances.

A more substantial question is raised with respect to the disclosure to the New York County District Attorney, to whom X Corp. admittedly delivered certain of the accountant's schedules which are subpoenaed here. X Corp. contends that although it disclosed the schedules to the District Attorney, it did not waive its privilege with respect to them, because the District Attorney and X Corp. shared a common interest in the grand jury's investigation, and the disclosure to the District Attorney did not increase the opportunity for X Corp.'s "adversaries" to receive the information.

Several courts have held that disclosure of work-product materials to a party with whom one has "joint" interests does not

---

2. *Colton v. United States,* 306 F.2d 633 (2d Cir.1962), on which the government relies, is inapposite: the court in *Colton* explicitly declined to reach the issue of the work-product

privilege. *Id.* at 640. Nor did the court in *In re John Doe Corp.,* 675 F.2d 482 (2d Cir.1982), the other case relied on by the government, reach the question of work-product waiver.

constitute waiver of the privilege. *See, e.g., Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 47 F.R.D. 334, 338 (S.D.N.Y.1969) (Herlands, J.); *United States v. American Telephone and Telegraph Co.,* 642 F.2d 1285, 1299–1300 (C.A.D.C.1980). For example, in *Stix,* the court held that the sharing of documents between parties who were both attempting to demonstrate the invalidity of a patent did not constitute waiver of the work-product privilege because the two parties shared a "community of interest" in proving that the patent was invalid. Had the patent been found valid as to either of the parties sharing information, the other would also have been subject to an infringement action because they both used the same product.

Similarly, in *United States v. American Telephone and Telegraph Co., supra,* a private antitrust plaintiff was held not to have waived its work-product privilege by sharing documents with the government which was also pursuing an antitrust complaint against the same defendant. The private plaintiff and the government, although involved in separate actions, were "aligned in interest in light of the facts that 'the same transaction is in litigation, the adversary is the same, and the positions of the parties involved in the exchange were substantially identical as against the adversary.'" 642 F.2d at 1300, *quoting* Opinion of the Special Master at 2 n. 3 (D.D.C. Nov. 27, 1979).

■ X Corp.'s contention that it was "aligned in interest" with the District Attorney or that it had "joint interests" against the same adversary is unpersuasive. X Corp. asserts that the "common adversary" was a certain employee that X Corp. believes embezzled funds from X Corp. and whom X Corp. understands was a subject of the state grand jury investigation as well as a defendant in a civil suit brought by X Corp. However, X Corp. does not purport to have any actual knowledge of who the subjects of the grand jury's investigation actually were, nor does it appear that X

Corp. could have such knowledge, the work of the grand jury being secret by law. X Corp. may have hoped that the grand jury's investigation was directed solely at the employee, and not, for example, at X Corp. itself. However, a mere hope or expectation that the District Attorney was an ally and not an adversary does not convert the relationship into a "community of interest."

The present, federal grand jury is seeking the same documents sought by the state grand jury. X Corp. asserts that the state grand jury was its ally and that the federal grand jury is its adversary, both assertions based, apparently, on its speculation as to the identity of the grand jury's targets. It is arguable whether a grand jury can ever be deemed to be "aligned in interest" with a private litigant; in any event, on the record presented, we cannot proceed on such an assumption.

■ For whatever reasons, X Corp. chose to waive whatever privilege it could have asserted before the state grand jury and submit the disputed schedules for the years 1976–1980 to the District Attorney.[3] The fact that X Corp. may not have intended by so doing to waive its privilege is not pertinent: when the conduct of the privileged party " 'touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.' " *In re Sealed Case,* 676 F.2d 793, 807 (C.A.D.C.1982) *quoting* 8 J. Wigmore, Evidence in Trials at Common Law § 2327 at 636 (J. McNaughton rev. 1961). Privileges are carefully and narrowly construed in the context of the subpoenas of a grand jury, which is entitled to every person's evidence, to the end that "courts should not frustrate the efforts of a grand jury unless the purpose as well as the letter of the privilege requires it." *In re Sealed Case, supra,* at 806, 811.

Movants are ordered to deliver to the Grand Jury all subpoenaed documents

---

3. The fact that the schedules were subpoenaed is not significant: had X Corp. chosen to assert its privilege against the subpoena, and had the

privilege been found valid, the documents would have retained their privileged character.

which were earlier delivered to the New York County District Attorney. With respect to the remainder of the documents subpoenaed, decision is reserved pending submission of proof by the government concerning the applicability of the privilege, evidence relating to alleged fraud, or substantial need on the part of the government.

It is so ordered.