CARTE BLANCHE (SINGAPORE)
PTE., LTD., Plaintiff,

v.

DINERS CLUB INTERNATIONAL, INC.
a/k/a Citicorp/Diners Club, Inc., a/k/a
the Diners Club, Inc. and Carte
Blanche International, Inc., Defendants.

No. 88 Civ. 2719 (PKL).

United States District Court,
S.D. New York.

March 19, 1990.

Orans, Elsen & Lupert, New York City (Sheldon H. Elsen, Lawrence M. Solan, Melissa A. Cohen, of counsel), for plaintiff.

Proskauer Rose Goetz & Mendelsohn, New York City (Steven J. Stein, Steven M. Kayman, of counsel), for defendant Diners Club Intern., Ltd.

Kay Collyer & Boose, New York City (Nathaniel H. Akerman, Michelana Hallie, of counsel), for defendant Carte Blanche Intern., Ltd.

## OPINION & ORDER

LEISURE, District Judge:

Plaintiff Carte Blanche (Singapore) PTE, Ltd. ("CBS") is appealing discovery rulings made by United States Magistrate Leonard A. Bernikow of this Court during his supervision of pretrial discovery in this matter. CBS contends the Magistrate's determinations, which required CBS to produce various documents sought by defendant Carte Blanche International ("CBI"), were in error. In addition, CBI appeals one of the Magistrate's rulings which protected a CBS document from discovery.

## BACKGROUND

On April 18, 1988, CBS commenced an action against Diners Club International, Inc. ("Diners") to enforce an arbitration award that CBS had won against CBI, a wholly-owned subsidiary of Diners. The arbitration award granted CBS damages and equitable relief as a result of CBI's interference with CBS's credit card business. In this action, CBS contends, *inter alia*, that CBI is merely a corporate shell being operated by Diners. To satisfy its arbitration award, CBS now seeks to pierce the corporate veil and get judgment against CBI's parent, Diners. Diners and CBI maintain that CBI is an operative entity, and CBS must look solely to CBI for satisfaction. The case was referred by order dated July 29, 1988 to the Honorable Leonard A. Bernikow, United States Magistrate of this Court, pursuant to 28 U.S.C. § 636(b)(1), for pretrial supervision.

Although this action commenced in 1988, trouble between the parties began in or about November 1984, when CBS's shareholders sold their stock to a family holding company called Global Equities ("Global"), run by the Tan family of Malaysia. Global, in turn, sought to sell an one-half interest in CBS to MBf Holdings Bhd., Ltd. ("MBf"). Before completing the transaction, MBf had its attorney, David Kimport, Esq. ("Kimport"), a partner with the San Francisco office of the law firm of Baker & McKenzie ("Baker"), investigate whether the proposed transaction would violate the franchise agreement between CBS and CBI. In reaching his conclusion that the transaction did not violate the agreement, Kimport communicated with various individuals including Tan Kim Wah, chairman of Global, Joseph Tan, solicitor for MBf, and Seymour Flug, chairman of CBI and Diners. Kimport also received information from attorneys at Baker regarding the legality of the proposed transaction. The scope of Kimport's investigation went beyond the proposed transaction when MBf and CBS became concerned about CBI's perceived interference with their credit card business. MBf and CBS had Kimport, who had since been also formally engaged by CBS, research possible legal maneuvers which MBf and CBS might pursue to protect their credit card interests.

In June 1985, the parties submitted the issue of the sale of the one-half interest in CBS to MBf to arbitration, as required by the franchise agreement. At this time, Baker was replaced as CBS's counsel by the firm of Orans, Elsen & Lupert ("Orans Elsen"), who remains as counsel to CBS. The arbitration panel found that the sale to MBf was within the bounds of the franchise agreement. However, the dispute did not end with the arbitrators' ruling.

In 1987, the parties continued with arbitration. The arbitrators were asked to determine whether CBS's credit card business was being illegally harmed by CBI and its parent, Diners.[1] The arbitrators ruled in favor of CBS, awarding CBS nearly $9 million in damages and issuing a mandatory injunction which prohibited CBI from further involvement with the Carte Blanche credit card. This Court confirmed the arbitration award in April 1988. However, CBS was unable to satisfy its judgment because CBI was without sufficient assets to meet the judgment awarded by the arbitrators. Thus, CBS proceeded in the present action seeking, in part, to pierce the corporate veil in hopes of reaching CBI's parent, Diners.

Relevant to this motion, CBI and Diners (collectively, the "defendants") subpoenaed documents from Baker which related to its client, CBS. In its preparation to respond to the subpoena, Baker engaged the firm of Dornbush, Mensch, Mandelstam & Silverman ("Dornbush"). Dornbush, with considerable assistance from Orans Elsen, compiled a list of 171 documents which Baker claimed were privileged and thus non-producible (hereinafter the "privileged documents" or "protected documents"). Additional discovery took place between the parties, including the deposition of attorney Kimport. In May 1989, the defendants moved to compel the production of the privileged documents. The defendants claimed that CBS had waived any privilege by not asserting work product immunity in a timely fashion, and thus violated local Civil Rule 46(e)[2]. After several conferences and written submissions by the parties, Magistrate Bernikow made his oral rulings which are the subject of the present motions.

The four rulings, properly appealed by the parties,[3] are, (1) work product immunity was waived for the protected documents by Baker's failure to specify such a claim of work product protection with particularity in accordance with local Civil Rule 46(e), (2) CBS waived any attorney-client privilege for Kimport's opinion letter, which addressed the legality of MBf's acquisition of CBS, because Kimport's testimony in the first arbitration hearing required disclosure of part of that letter, (3) no attorney-client privilege attached to documents memorializing factual information received by Kimport from non-client sources, and (4) attorney-client privilege did protect a letter from solictor, J.G. Advani, an attorney for CBS, to Fong Wai Faun, who was not Advani's client, on the ground that Fong Wai Faun was acting as CBS's agent at the time. The first three rulings are appealed by CBS. The fourth ruling is appealed by the defendants. For the reasons discussed below, the Magistrate's rulings are affirmed in part, and remanded in part for further determination.

## DISCUSSION

The Court initially notes that "a magistrate's resolution of pretrial discovery disputes is entitled to substantial deference and may not be disturbed by a District Court in the absence of a finding that the magistrate's order was 'clearly erroneous

---

**1.** A third defendant in this arbitration was Citicorp, which owns Diners.

**2.** Local Civil Rule 46(e) provides in pertinent part:

(1) Where an objection is made to any interrogatory or sub-part thereof or to any document request under Fed.R.Civ.P. 34, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.

(2) Where a claim of privilege is asserted in objection to any interrogatory or document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion,

(i) the attorney asserting the privilege shall in the objection to the interrogatory or document demand, or sub-part thereof, identify the nature of the privilege (including work product) which is being claimed....

Civil Rules for the Southern and Eastern Districts of New York 46(e) (hereinafter "local Civil Rule 46(e)").

**3.** The defendants challenge Magistrate Bernikow's ruling that plaintiff's inadvertent production of a privileged document did not result in a waiver of the privilege. *See* Defendants' Memo in Opposition at 33. As the issue is not properly appealed, the Court declines to address defendants' argument.

or contrary to law.'" *Maresco v. Evans Chemetics,* No. 89 Civ. 0322, 1989 WL 201601 (S.D.N.Y. August 30, 1989). *See* Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(a) (1982). Thus, "in resolving discovery disputes, the Magistrate is afforded broad discretion which will be overruled only if abused." *Citicorp v. Interbank Card Ass'n,* 478 F.Supp. 756, 765 (S.D.N.Y.1979). The Court will consider Magistrate Bernikow's rulings in light of this deferential standard. However, first, the Court will address the omission of a complete ruling on the waiver of CBS's attorney-client privilege.

*I. Waiver of Attorney–Client Privilege*

■ The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1980). Its purpose is to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observances of law and administration of justice." *Id.* The attorney-client privilege applies to confidential communications made by a client to his attorney for the purpose of obtaining legal advice, as well as the responses by the attorney to such inquiries. *See, e.g., Colton v. United States,* 306 F.2d 633, 636–37 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); New York Civ.Prac.L. & R. ("CPLR") § 4503; *Root v. Wright,* 84 N.Y. 72, 76 (1881) ("The rule that an attorney cannot disclose communications ... extends to communications in reference to all matters which are the proper subject of professional employment."); *People v. Shapiro,* 308 N.Y. 453, 458, 126 N.E.2d 559, 562 (1955); *Matter of Reuter,* 6 Misc.2d 411, 413–16, 163 N.Y.S.2d 576, 580–84 (Sup.Ct. New York Co.), *aff'd,* 4 A.D.2d 252, 164 N.Y.S.2d 534 (1st Dep't 1957).[4] In addition, the priv-

ilege must be claimed and not waived by the client. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1036 (2d Cir.1984). Moreover, the attorney-client privilege can be waived only by the client and cannot be waived by counsel. *See, e.g., Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 680 (S.D.N.Y.1983); CPLR § 4503 ("Unless the client waives the privilege, an attorney ... shall not disclose, or be allowed to disclose such communication, in any action."); *Mileski v. Locker,* 14 Misc.2d 252, 255–56, 178 N.Y. S.2d 911, 915–16 (Sup.Ct. Queens Co.1958); *Vilardi v. Vilardi,* 200 Misc. 1043, 1046, 107 N.Y.S.2d 342, 344–45 (Sup.Ct. New York Co.1951); *Matter of Cunnion,* 61 Misc. 546, 548–49, 115 N.Y.S. 969, 970–71 (Sur.Ct. Kings Co.1908), *aff'd,* 135 A.D. 864, 120 N.Y.S. 266 (2d Dep't 1909), *aff'd,* 201 N.Y. 123, 94 N.E. 648 (1911). Indeed, the attorney-client privilege forbids the attorney from waiving the privilege. *United States v. Schwimmer,* 892 F.2d 237, 245 (2d Cir.1989).

■ The difficulty in the case at bar is that the client, CBS, lies beneath three layers of attorneys, Baker, Orans Elsen, and Dornbush. However, it is clear that CBS is the client, for the purposes of the privilege, because it is CBS's interests which are being litigated. The allegedly privileged documents may be protected by CBS's attorney-client privilege, and only CBS, as the client, may waive that privilege. CBS's attorneys are not in the position to effect such a waiver. Thus, CBS must be found to have waived the attorney-client privilege before CBI is allowed discovery of the possibly privileged documents.

Magistrate Bernikow's rulings do not reach the issue of who may properly waive the attorney-client privilege. The absence of this determination in the Magistrate's

---

4. *See* Fed.R.Evid. 501; *see generally,* *Sussex Leasing v. US West Financial Servs., Inc.,* 877 F.2d 200, 201 (2d Cir.1989) ("Jurisdiction is predicated on diversity of citizenship. The parties assume that New York law governs; the record confirms this."); *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 n. 5 (2d Cir.1986), *cert.* *denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *cf. Lehman v. Dow Jones & Co., Inc.,* 783 F.2d 285, 294 (2d Cir.1986). Research indicates that the general principles enunciated in the non-diversity federal cases cited in this opinion are consistent with New York law on the subject.

rulings is understandable because the Magistrate may have believed Baker, in responding to CBI's subpoena, was the "client" in determining the waiver issue. Because CBS, not Baker, is the client entitled to the privilege, the Court finds it necessary to remand the case to the Magistrate to determine which, if any, of the privileged documents fall within the attorney-client privilege and have not been waived by CBS.[5] The Court next turns to the substance of Magistrate Bernikow's rulings.

## II. Review of the Magistrate's Rulings

### A. Waiver of Work Product Immunity

CBS contends that the Magistrate erred in finding work product immunity waived when it was not asserted in a timely fashion to protect various documents. In contrast to the attorney-client privilege, the work product doctrine protects "an attorney's mental impressions, opinions or legal theories concerning specific litigation." *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). Notwithstanding the importance of the doctrine, work product immunity is a "qualified privilege" as opposed to the "absolute privilege" granted to attorney-client communications. Fed.R.Civ.P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 237–38, 95 S.Ct. 2160, 2169–70, 45 L.Ed.2d 141 (1975). Thus, work product may give way where the attorney-client privilege would remain inviolable. The applicable case law has not discussed whether counsel may waive work product protection. However, it seems clear that the attorney may waive the benefits of the privilege, because it is the attorney's material, not the client's, receiving protection. *See Nobles, supra,* 422 U.S. at 239, 95 S.Ct. at 2170 (attorney's decision to use work product material affirmatively during trial waived immunity); *In re Grand Jury Subpoena Duces Tecum Dated March 24, 1983,* 566 F.Supp. 883, 884–85 (S.D.N.Y.1983) (attorney voluntarily turned over work product materials to the New York County District Attorney's office, resulting in waiver of immunity).

In failing to specify work product as the particular privilege protecting its various documents, Baker, through its attorney Dornbush, assisted by Orans Elsen, waived work product immunity for the documents. The Court rejects plaintiff's arguments that, first, no violation of local Civil Rule 46(e) occurred, and, second, that such a violation may not operate as a waiver of the immunity. Local Civil Rule 46(e) is clear in its provision that "the attorney asserting the privilege shall in the objection to the interrogatory or document demand ... *identify the nature of the privilege (including work product) which is being claimed.*" Rule 46(e)(2)(i) of the Civil Rules for the Southern and Eastern Districts of New York (emphasis added). The privileged document list compiled by Baker's attorneys did not satisfy this requirement by its prophylactic assertion of "privilege" to cover all 171 documents. *See* Plaintiff's Memo in Objection, Exhibit A. In its challenge to the Magistrate's ruling, plaintiff fails to show that a literal application of local Civil Rule 46(e) here is clearly erroneous. Rather, plaintiff protests the Magistrate's ruling as being one based on a "hypertechnicality." However, the importance of local rules should not be taken so lightly. The local rules supplement the federal rules governing civil proceedings. Fed.R.Civ.P. 83. Accordingly, their importance should not be diminished by skirting their application when the results prove harsh to a party. *See generally In re Sutter,* 543 F.2d 1030, 1036–38 (2d Cir. 1976). Thus, it is clear that Magistrate Bernikow's finding of a waiver of work product immunity by plaintiff was not clearly erroneous.

### B. Waiver of Privilege For Kimport's Opinion Letter

The Magistrate ruled that CBS had waived its attorney-client privilege for Kimport's opinion letter advising CBS on

---

5. Due to the extensive number of documents involved, as well as the scant number of documents submitted to the Court, it is impossible for the Court to determine which documents are protected by CBS's attorney-client privilege.

the proposed sale of the one-half interest in CBS to MBf. The Magistrate found that the waiver occurred when Kimport testified in regard to a portion of the letter during the first arbitration hearing. Magistrate Bernikow held that the "fairness doctrine" required full disclosure of the letter after CBS had revealed part of the letter to support its case in arbitration. The "fairness doctrine" requires that testimony as to part of a privileged communication, in fairness, requires production of the remainder. *See case citations and discussion in In re Von Bulow*, 828 F.2d 94, 101–02 (2d Cir.1987). In the case at bar, Kimport's opinion letter contained two parts—one addressing the law governing the proposed sale of CBS to MBf, and the other outlining Kimport's strategic advice in the matter. After a thorough review of the entire letter, the Magistrate found that the two parts related to "the same subject matter." *See* Plaintiff's Memo in Objection, Exhibit H. The ruling is not "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). Plaintiff's request that the ruling on the opinion letter be overruled is therefore denied.[6]

### C. *No Attorney–Client Privilege For Documents Relating Factual Information From Non–Client Sources*

Plaintiff's final objection goes to the Magistrate's refusal to protect a number of documents written by Kimport relating factual information Kimport uncovered during his investigations. It appears that the Magistrate based his ruling on *Kenford Co. v. County of Erie*, 55 A.D.2d 466, 390 N.Y.S.2d 715 (4th Dep't 1977), where the court stated that, "[i]t has long been settled that information received by the attorney from other persons and sources while acting on behalf of a client does not come within the attorney-client privilege." 55 A.D.2d at 469, 390 N.Y.S.2d at 718. Plain-

tiff argues that reliance upon *Kenford* is inappropriate in the instant case because defendants sought, not only the information provided by the plaintiff's counsel, but also the documents relating the information. Defendants respond that plaintiff's distinction is nonsensical.

Although cases do not address whether documents which memorialize factual information gathered by the attorney should receive attorney-client protection, both parties agree that the privilege gives way when the attorney merely communicates information obtained from independent sources. *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 80 (S.D.N.Y.1986); *Kenford, supra*, 55 A.D.2d at 471, 390 N.Y.S.2d at 719 (" 'In this respect, the attorney serves as a fact-gathering agent for the client.' ") (*citing* 3A Weinstein–Korn–Miller, N.Y.Civ. Prac. ¶ 3131.02, p. 31–493). In the instant case, the factual information gathered by Kimport was conveyed by Kimport to CBS by outlining the information in a letter. Further, Magistrate Bernikow reviewed the documents in issue here, *in camera*, and found them to be communicating factual information, not legal advice. Indeed, where the Magistrate believed legal advice to be given, he required redaction of those portions. Under these circumstances, plaintiff fails to show that the Magistrate's ruling for these documents was a misapplication of the law.

### D. *Attorney–Client Privilege Protects Communications To Client's Agent*

Defendants object to the Magistrate's ruling which protected a letter written by J.G. Advani ("Advani") to Fong Wai Faun ("Fong") in August 1979. At the time, Advani was an attorney for Tan Kim Wah ("Tan"), a member of the Tan family which owned CBS. Advani was providing advice

---

**6.** Plaintiff further objects to the Magistrate's ruling because the arbitrators' decision allegedly found no waiver of the second portion of Kimport's letter. However, plaintiff's objection is not supported by a plain reading of the excerpted portion of the arbitration transcript. *See* Plaintiff's Memo in Objection, Exhibit E. The Court agrees with defendants in that the arbitra-

tors did not reach the issue in rendering their decision. Indeed, the transcript indicates that plaintiff's counsel prevented the arbitrators from reviewing the entire letter. Thus, it is disingenuous for plaintiff's counsel to now assert that the arbitrators made a binding ruling on this issue.

on a draft of the franchise agreement between CBI and CBS. Fong, though not Tan's employee, was retained by Tan to assist in the transaction.[7] Defendants argue that the attorney-client privilege does not attach to the letter because plaintiff failed to prove Fong received the letter as an "agent" for Tan. In support, defendants cite deposition testimony in which Tan states that Fong was not his employee at the time. Tan also testified that he, not Fong, was Advani's client. *See* Defendants' Memo in Objection, Exhibits E–H.

 Defendants' argument ignores the critical inquiry made by Magistrate Bernikow—was Fong acting as Tan's agent despite not being Tan's employee? It is unquestionable that a person may be another's agent without being an employee. Further, the fact that Fong was not Advani's client is irrelevant to the Magistrate's ruling because the attorney-client privilege here is predicated on the existence of an agency relationship. The record had ample evidence supporting the Magistrate's determination that Fong was in fact Tan's agent. Thus the Magistrate's ruling should not be disturbed.

### CONCLUSION

Plaintiff's objections to Magistrate Bernikow's rulings that various documents are producible are without merit. Defendants' objection to the Magistrate's ruling precluding disclosure of the Advani letter is also without merit. Accordingly, plaintiff's and defendants' motions to overturn the rulings are denied. However, the Court remands the case to Magistrate Bernikow to determine if plaintiff's attorney-client privilege attaches to any documents without the privilege being waived by plaintiff.

SO ORDERED.

---

**7.** Apparently, Fong was well-qualified to assist in this transaction, since he had previously been associated with the Diners Club franchise in Malaysia. Indeed, Fong was hired by Tan, the following year, to operate the CBS franchise.